Nathan CURRY, Appellant,

v.

DELL PUBLISHING COMPANY, Inc., Appellee.

No. 6003.

Court of Civil Appeals of Texas.

El Paso.

March 5, 1969.

Rehearing Denied April 2, 1969.

———◇———

John J. Watts and Ralph E. Harris, Odessa, for appellant.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., Midland, for appellee.

## OPINION

FRASER, Chief Justice.

As stated in the appellant's brief, in October, 1961, the appellee published an article in its publication called "Front Page Detective" magazine, entitled "When the Window Peeper Comes to the Door". Appellant states that the article imputed that Nathan Curry, appellant, was guilty of the murder of Florence Hussey, and that the article contained many statements which were false, untrue and defamatory. Appellant also points out that subsequent to the publishing of the article, labeled "libelous" by the appellant, the appellant was tried and found not guilty of the murder of Florence Hussey by a jury in the District Court of Palo Pinto County, Texas. Appellant then instituted this suit in the District Court of Ector County, Texas against the appellee and Basin News Agency (the Basin News Agency was subsequently dropped from the lawsuit), alleging that the article was libelous and was an invasion of privacy, and prayed for actual and punitive damages. The cause was removed by appellee to the Federal District Court for the Western District of Texas, Pecos Division, April 7, 1964. The cause was remanded to the 70th District Court of Ector County, Texas on September 28, 1964, on the ground that the Federal District Court found that it did not have jurisdiction. Then, on February 22, 1966, the defendant Basin News Agency was dismissed as a defendant. On June 10, 1968, the 70th District Court of Ector County, Texas found that it did not have jurisdiction over the appellee and entered its order dismissing this cause for want of jurisdiction. Appellant accordingly brings this appeal, complaining of the court's above described action in dismissing the cause.

The only citation which was issued for service upon Dell Publishing Company, Inc. was delivered to Hon. Crawford C. Martin, Secretary of State of Texas, on March 19, 1964. We should like to point out here that it must be continually borne in mind that the appellee bought the article from a free-lance writer and included it in its magazine as heretofore stated. It then sold this issue of the magazine and others to the Dell Distributing, Inc.

Appellee points out in its brief that interrogatories were submitted to and answered by appellee by and through the executive vice president of the publishing company, William F. Callahan, Jr., and states that the answers to the interrogatories were presumably found credible by

the trial court and are in this record without challenge, objection or suspicion. Appellee further states that it has no distributors in Texas, nor other employees who call upon the distributors or purchasers of its magazine in Texas, and that there have been no employees of the company who have transacted business for it in Texas during the year 1961 or otherwise. Appellee further asserts that Dell Publishing Company, Inc. and Dell Distributing, Inc. are entirely separate and different corporations, and that Dell Publishing Company has not attempted to control the distribution of its magazines or other publications by Dell Distributing, Inc., and that appellee has no right to control any of such operations of the distributing company. Appellee also sets out that all of the stock of Dell Distributing, Inc. is owned by Dell Publishing Company, Inc., but appellee asserts that Dell Distributing, Inc. is an entirely separate corporation, operated and controlled by its own officers and directors, and there are no financial arrangements and no contracts in writing between the two companies. Appellee further alleges that the magazines of Dell Publishing Company, Inc. are printed in New York and are there sold and delivered over to Dell Distributing, Inc., and that thereafter appellee Dell Publishing Company exercises no control over distribution, sale or otherwise disposition of the magazines purchased by the Dell Distributing Company. Further, appellee points out that the publishing company does not have any agent or place of business in Texas and does not engage in any business in Texas, and has never itself distributed the magazines in Texas, nor does it have any employees, agents or representatives who work in any state other than New York. Appellee carefully emphasizes that appellee has no financial arrangements with any dealers or distributors of its magazines or periodicals, and it does not give any dealer or distributor credit for any items not sold. It appears that some 13,800 copies of this particular issue of the magazine which contained the allegedly libelous article were sold in Texas. Appellee further maintains that it does not make any decisions or determinations as to how many of the magazines or other publications are to be sent to Texas, nor does it control the method of delivery. In short, appellee alleges that it simply sells its issue in package form to the Dell Distributing, Inc. and exercises no further control. Appellee further asserts that the author of the article, one Paul McClung, of Wichita Falls, Texas (writing under the pseudonym of Stanley Harris) either orally or in writing solicited the appellee's acquisition of such article from him; in other words, solicited the appellee for the purpose of selling his article to it for delivery to appellee in New York. Appellee further maintains that it did not send any agent to Texas to publish the article and argues that there is nothing in the record to substantiate appellant's assertion that payment for the article occurred in Texas. Appellee also contends that the replies to the interrogatories establish that the appellee publishing company has never sold any of its publications to Texas residents, but that its magazines and other publications were sold and delivered by appellee to Dell Distributing, Inc. in New York, and thereafter Dell Publishing Company had no control over the other company or any of its agents, representatives or employees. Appellee argues this in spite of the fact that it (the publishing company) owned all of the stock of the distributing company. No suit was filed by appellant against the distributing company.

Appellant has presented two points of error, but, after reviewing the briefs and the record, it is our opinion that the holding on Point No. 2 is decisive of the case, so we will take it up accordingly. In this point appellant argues that the trial court erred in dismissing this cause for want of jurisdiction for the reason that appellee waived its special appearance and entered a general appearance when it removed this cause to the Federal District Court and after removal appeared and participated in proceed-

ings unrelated to its special appearance. We think that this point must be overruled and that we must hold that appellant did not obtain proper service on appellee in this case.

■ It appears that appellee, upon learning that service had been had upon it by serving citation on the Secretary of the State of Texas by appellant, removed the matter to the Federal court. Following the provisions of 28 U.S.C.A. § 1446, appellee filed verified petition for removal with the Federal court and filed copy of the same with the Clerk of the State court. Appellee also filed a proper bond in line with the procedure outlined by the Federal statutes. Therefore, it appears that appellee took the necessary steps to remove the matter to the Federal court under the provisions of 28 U.S.C.A. §§ 1446, 1441, and 1447. After the removal had been accomplished, appellee immediately filed its Motion to Dismiss for Want of Jurisdiction along with its Motion to Quash the substituted Service of Process upon the Secretary of the State of Texas. Such was done in accordance with Rule 12, Federal Rules of Civil Procedure. Apparently appellee faithfully and properly followed and complied with the provisions of Rule 120a, Texas Rules of Civil Procedure. Plaintiff-appellant then filed his Motion to Remand in the Federal court. Appellee filed no answer to this motion, which the Federal court granted, and remanded the case to the State court. In the State court, the publishing company then filed its motions objecting to the jurisdiction of the court and the process. Appellee, in our opinion, expressly complied with Rule 120a, which permits such special appearance. We hold there was no appearance of defendant in the State court because, upon the filing of the Petition for Removal with accompanying bond, the State court was divested of jurisdiction and there was no provision or necessity for the defendant to appear specially or otherwise until the case had been remanded from the Federal court. It

has been held that the actions outlined above do not constitute a general appearance, but merely take the case out of the hands of the State court; also, that after the suit was removed to the Federal court, and during its pendency in that court, as stated above, the State court had no jurisdiction, and therefore defendant was not required to file an answer in that court, even to the merits of the case. We have here the legal picture of the appellee removing the cause to the Federal court before doing anything or making any appearance in the State court, until after the Federal court remanded the cause to the State court. Upon the occurrence of that event, appellee made its appearance and its objections as a special appearance for the purpose of objecting to the jurisdiction of the court. The trial court sustained the objection to its jurisdiction and dismissed the cause. Goldey v. Morning News, 156 U.S. 518, 15 S.Ct. 559, 39 L.Ed. 517; Bishop-Babcock Sales Co. v. Lackman, 4 S.W.2d 109.

■ Furthermore, it is apparent that appellant failed to accomplish successful service of citation on appellee. We cannot find anywhere in the record the necessary affirmative allegations by appellant that appellee does not maintain a place of regular business in this State, or a designated agent upon whom service of citation may be made. It has been stated, under Article 2031b, Vernon's Ann.Civ.St., that the provisions of said Article are clear, and plaintiff has the burden of making sufficient allegations to bring the defendant within its provisions. We do not find such allegations in the record. For this reason, service on the Secretary of the State of Texas was not justified. McKanna v. Edgar, 388 S.W.2d 927 (Tex.1965); Castle v. Berg, Tex.Civ. App., 415 S.W.2d 523 (n. w. h.).

For these reasons appellant's second point is overruled, and we hold that appellant did not obtain sufficient legal service upon appellee in the State court, and

said court was justified in dismissing said cause.

Much space has been devoted in the briefs as to whether or not appellee was "doing business" in Texas. Had we not felt that our disposition of appellant's Point 2 disposes of the case, we would be strongly inclined to discuss this feature, especially in a case of this nature where two corporations exist with the parent corporation owning all the stock in the subsidiary. Owning all the stock naturally carries with it the control of the subsidiary whenever the parent corporation chooses to exercise it. We make this observation because in the publishing business, where widespread or national periodicals or magazines are involved, they must exist not only on the sale of the magazine, but on the advertising that they are able to procure. In this case appellee bought, paid for, and published the article in question in its own magazine, and then sold the magazine issue to its subsidiary corporation knowing that widespread distribution would be involved, as attested by the fact that it printed some 300,000 copies of the magazine containing the allegedly libelous article. We are not saying, or attempting to say, that there is anything illegal in the corporate alter ego, or corporation with subsidiaries. What we are saying is that in this particular case the publishing company bought the story, included it in its own magazine, and then sold the magazine issue (some 300,000 copies) to its own, wholly-owned subsidiary, thereby initiating the causal chain of events, well knowing that the magazine would have national circulation and, if libelous, the article could cause untold harm. The harm and damage, if any, of course would be most acute where the victim of the allegedly libelous article lived and/or worked. However, we do not pass on this point as our disposition of Point No. 2 is decisive of this cause.

Appellant's Point No. 2, in our opinion, being decisive of this case and having been overruled, the judgment of the trial court is affirmed.