Tomas **MENCHACA** and **Irma**
**Menchaca**, Appellants,

v.

**CHRYSLER LIFE INSURANCE**
**COMPANY**, Appellee.

No. 16289.

Court of Civil Appeals of Texas,
San Antonio.

June 30, 1980.

J. G. Hornberger, J. R. Hornberger, Jr., Laredo, for appellants.

Donato D. Ramos, Person, Whitworth, Ramos, Borchers & Morales, Laredo, for appellee.

OPINION

CADENA, Chief Justice.

Plaintiffs, Tomas Menchaca and wife, Irma Menchaca, complain of an order of the trial court sustaining the special appearance filed by defendant, Chrysler Life Insurance Company, under the provisions of Rule 120a, Texas Rules of Civil Procedure, and dismissing plaintiffs' suit because of lack of jurisdiction by the Texas court over the person and property of defendant.

Chrysler Credit Corporation and Winter Garden Chrysler Plymouth, Inc., were also named as defendants in plaintiffs' petition. Plaintiffs' claim against Chrysler Life Insurance Company was severed from the remainder of the suit, and we are not here concerned with plaintiffs' claim against the other defendants. In this opinion the term "defendant" is used to identify only Chrysler Life Insurance Company.

The allegations in plaintiffs' petition may be summarized as follows:

1. In 1974 plaintiffs, then residents of Florida, purchased an automobile in that state from Winter Garden, financing the purchase through Chrysler Credit. Winter Garden was an agent of defendant.

2. At the time they purchased the vehicle plaintiffs purchased credit life insurance, health and accident insurance and

physical damage insurance. The sale of the insurance was handled by Winter Garden, and the salesman from Winter Garden delivered to plaintiffs three certificates of insurance. However, in the retail installment sale contract, Winter Garden failed to list the premium of $281.00, representing the premium for the physical damage insurance and, instead, listed the health and accident premium ($232.00) in the space provided for listing the physical damage premium. As a result, the contract reflects that plaintiffs paid a premium of $232.00 for physical damage protection and a premium of $253.32 for credit life insurance. According to the contract, plaintiffs did not purchase health and accident insurance, although Winter Garden delivered to them a certificate reflecting the purchase of a health and accident policy.

3. In 1976, after plaintiffs had moved to Laredo, Texas, Tomas Menchaca suffered a physical injury and submitted a claim to defendant. By letter delivered to plaintiffs in Laredo defendant rejected the claim. In this letter defendant informed plaintiffs that the installment contract listed only the purchase of credit life insurance, and that the portion of the insurance certificate reflecting the purchase of disability benefits (health and accident insurance) was filled out in error. According to this letter, the premium of $232.00 which, according to the certificate, was the premium for disability benefits, was actually the premium for physical damage insurance.

4. When Tomas Menchaca, later in 1976, suffered a serious and disabling physical injury he made no claim against defendant because he relied on the statement contained in defendant's letter that plaintiffs had not purchased health and accident insurance. Because of Tomas Menchaca's disability, plaintiffs were unable to continue making payments on the automobile and the vehicle was repossessed by Chrysler Credit in Laredo.

5. Winter Garden, Chrysler Credit and defendant "conspired and confederated together in the commission of the above described conduct . . . . All representations and acts were false, misleading, and deceptive," constituting violations of section 17.46 of the Texas Business and Commerce Code and of the Florida Deceptive and Unfair Trade Practices Law. The conduct of Winter Garden Chrysler Credit and defendant constituted a "breach of warranty of the retail contract" or, alternatively, "the above described facts show mistake and fraud committed by" Chrysler Credit, Winter Garden and defendant.

Plaintiffs' petition also contained the following allegations:

## II

Plaintiffs are residents of Webb County, Texas, . . . who have been adversely affected by the unlawful acts and practices engaged in by Defendants in their trade and commerce within the State of Texas and State of Florida.

## III

Defendant Chrysler Life Insurance Company is a corporation which has done business in Texas which gave rise to this cause of action . . . . This defendant does not maintain a place of regular business in Texas or a designated agent upon whom service of process may be made, nor is this defendant required to do so. Service of process may be had upon the Insurance Commissioner of the State of Texas . . . .

In its special appearance defendant alleged that it was not a resident of Texas and that (a) it had performed no act or consummated any transaction in Texas connected with plaintiffs' cause of action; (b) the plaintiffs' alleged cause of action arose out of business done by defendant in Florida and not out of business done by defendant in Texas; (c) plaintiffs' pleadings contain no allegations of facts which would make defendant or its property amenable to process within Texas; (d) defendant maintains no registered agent for service in Texas nor is it required to do so; (e) the validity and interpretation of the insurance contract, as well as the obligations under such

contract, are to be determined in accordance with the law of Florida, the state where the contract was made and in which it is performable; and (f) the selection of a Texas forum for "the adjudication of a Florida contract and Florida deceptive trade practices invokes the doctrine of *forum non conveniens.*"

■ The evidence at the hearing on the special appearance established that defendant held a certificate of authority to transact insurance business in Texas. Plaintiffs, relying on *Continental Oil Co. v. P. P. G. Industries,* 504 S.W.2d 616 (Tex.Civ.App.– Houston [1st Dist.] 1973, writ ref'd n. r. e.), and *H. Rouw Co. v. Railway Exp. Agency,* 154 S.W.2d 143 (Tex.Civ.App.–El Paso, 1951, writ ref'd), insist that a Texas resident can bring an action in Texas against a foreign corporation having a permit to do business in Texas even if the cause of action arose in another state. This basis for asserting *in personam* jurisdiction over defendant by a Texas court is not alleged in plaintiffs' petition. The holding in *Gathers v. Walpace Co., Inc.,* 544 S.W.2d 169, 170–71 (Tex.Civ.App.–Beaumont 1976, writ ref'd n. r. e.) would preclude the consideration of this basis for asserting jurisdiction over defendant.

Plaintiffs' petition asserts, among other things, the commission of a tort consisting of a fraudulent misrepresentation on which plaintiffs relied with resultant damage. The alleged fraudulent misrepresentation was communicated to plaintiffs in Texas.

The Texas "long arm" statute vests Texas courts with jurisdiction over nonresidents who have committed a tort "in whole or in part in this State." Tex.Rev.Civ.Stat.Ann. art. 2031b, § 4 (Vernon Supp.1979). The power of a state to exercise jurisdiction over a nonresident, who has committed a tort within the forum, with respect to a cause of action in tort arising from the nonresident's conduct, is beyond question. The basic decision by the Supreme Court of the United States in this area is *Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), which upheld the constitutionality of a nonresident motorist stat-

ute. *Cf. Olberding v. Illinois Central R. Co., Inc.,* 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953); Restatement (Second) of Conflict of Laws §§ 36, 49 (1971); H. Goodrich & E. Scoles, Conflict of Laws § 76 (4th ed. 1964).

■ Defendant's contention that plaintiffs' pleadings fail to include all of the necessary jurisdictional allegations authorizing the issuance of process under the long arm statute is without merit. The petition alleges that defendant "has done business in Texas which gave rise to this cause of action." In addition, the petition asserts that plaintiffs' damages flowed from a fraudulent misrepresentation communicated to plaintiffs in Texas. The allegations charge the doing of a purposeful act in Texas and that the cause of action arose from such act. We believe that the pleadings sufficiently meet the tests required by *O'Brien v. Lanpar Co.,* 399 S.W.2d 340, 342 (Tex.1966). A tort involves wrongful conduct which a state has the power to attempt to deter and against which it attempts to afford protection. It is reasonable to permit a state to exercise jurisdiction over a person who has engaged in conduct in that state which is claimed to be a tortious act. Such exercise of jurisdiction cannot be said to offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). It should be borne in mind that the basis for upholding the jurisdiction of the Texas court in this case is the commission of the tort in Texas, without reference to any transaction which occurred in Florida. We have here a tortious act in Texas producing injury in Texas.

The merits of plaintiffs' cause of action were not in issue at the hearing on defendant's special appearance and of course, the merits of the cause of action are not in issue here. *Gathers v. Walpace Co., Inc.,* 544 S.W.2d 169, 171 (Tex.Civ.App.–Beaumont 1976, writ ref'd n. r. e.).

The judgment of the trial court is reversed and the cause is remanded for further proceedings.