**TM PRODUCTIONS, INC., Appellant,**

v.

**BLUE MOUNTAIN BROADCASTING CO., Appellee.**

No. 20482.

Court of Civil Appeals of Texas, Dallas.

Aug. 13, 1981.

Rehearing Denied Oct. 29, 1981.

Jeffrey Wood, Kemp Gorthey, Kolodey & Thomas, Dallas, for appellant.

Ben L. Krage, Kasmir, Willingham & Krage, Dallas, for appellee.

Before GUITTARD, C. J., and AKIN and ROBERTSON, JJ.

GUITTARD, Chief Justice.

The trial court dismissed this suit for lack of jurisdiction over the person of defendant. Plaintiff appeals, contending that defendant consented to jurisdiction in Texas and that defendant's contacts with Texas were sufficient to satisfy due process. We hold that plaintiff did not properly raise the consent issue in the trial court and that the court's finding of lack of minimum contacts is supported by the evidence. Consequently, we affirm.

### Findings and Conclusions

We take our statement of facts from the trial court's findings, which are not challenged. Plaintiff TM Productions, Inc. is a Texas corporation engaged in the business of making and selling musical commercials for radio and television stations. It sells its products to customers throughout the United States and around the world, through sales representatives living and working in their respective territories. Defendant Blue Mountain Broadcasting Company is an Idaho corporation which maintains its principal place of business in Oregon. Its owner and general manager is John H. Runkle, Jr. Having received brochures describing TM's products, Runkle made a telephone call to TM's office in Dallas inquiring about the availability of the products. He was advised that demonstration tapes would be sent. Not having received the merchandise, he made another telephone call. No further contacts occurred until approximately two months later, when TM's sales representative visited Blue Mountain's office in Oregon. On that occasion, Runkle, acting for Blue Mountain, signed two written contracts in the form of agreements licensing the use of TM's products for a period of three years. On the reverse side of one of the contracts are the following printed provisions:

13. This agreement shall not be effective for any purpose until accepted and executed by an officer of TM in Dallas, Dallas County, Texas. This agreement shall be deemed to have

been entered into by both parties in Dallas, Dallas County, Texas.

.   .   .   .   .

15. This agreement shall be interpreted under the laws of the State of Texas and shall be performable at Dallas, Dallas County, Texas. Exclusive venue and jurisdiction of any dispute or suit arising hereunder shall lie within the courts of the State of Texas or within the courts of the United States of America located within the Northern District of Texas.

After the contracts were signed, TM mailed its products to Blue Mountain in Oregon. Blue Mountain made one payment on each contract by mail to TM's Dallas Office. Blue Mountain has had no other contacts with the State of Texas.

Defendant Blue Mountain made its special appearance by a sworn plea to the jurisdiction, alleging that it was not amenable to process issued by the Court of Texas because it was not a resident of Texas, had not engaged in business in Texas and had no agents, employees, or place of business in Texas. The plea further alleges that the contracts sued on were negotiated and executed in Oregon and that the products described by the contracts were delivered to the defendant in Oregon.

At the special appearance hearing, defendant offered in evidence the deposition of John H. Runkle, Jr., with the two contracts attached as exhibits. Other evidence was offered by plaintiff. The trial court made findings of fact and concluded that defendant did not purposely avail itself of the privilege of conducting activities in Texas, that defendant did not purposely invoke the benefits or protection of Texas laws, that defendant had insufficient minimum contacts with Texas, and that it would not be fair and reasonable to require defendant to come into Texas to defend the action. Accordingly, the court dismissed the suit.

*Consent to Jurisdiction*

On this appeal, plaintiff contends that defendant failed to establish its lack of amenability to process because one of the contracts in question contains an express consent to suit in Texas courts. Defendant replies that plaintiff cannot now assert jurisdiction of defendant's person on the basis of such a consent because it did not plead consent as a ground of jurisdiction and did not otherwise raise that ground in the trial court. We agree.

The only ground of jurisdiction alleged in the petition is the following:

3. Defendant is doing business within the State of Texas by entering into contracts by mail with residents of the State of Texas to be performed in whole or in part by either party within the State of Texas. Defendant does not maintain a place of regular business in this State or a designated agent within the State of Texas upon whom service may be made upon causes of action arising out of the business done by Defendant in the State. Accordingly, Defendant has appointed the Secretary of the State of Texas as agent for Defendant upon whom service of process may be had in this suit.

Plaintiff asserts that this allegation is a sufficient ground of personal jurisdiction, and, since a sufficient ground is alleged, defendant, by its special appearance, assumed the burden of establishing its lack of amenability to service by both pleading and proof. Plaintiff insists that since the contract was offered in evidence and paragraph 15 was read to the court and admitted without objection, the consent to jurisdiction therein provided establishes Blue Mountain's amenability to suit in Texas.

█ If the question were one of first impression, we would be inclined to reject plaintiff's contention on the ground that at the special appearance hearing the only question under rule 120a is the defendant's amenability to Texas process, as distinguished from the validity of the process issued and served, and that insufficiency of

**430**

the jurisdictional allegations of the petition affects the validity of the process rather than amenability to process. This view is based on the analysis of the problem by Professor E. Wayne Thode in *In Personam Jurisdiction, Article 2031B, The Texas "Long Arm" Jurisdiction Statute; and the Appearance to Challenge Jurisdiction in Texas and Elsewhere*, 42 Texas L.Rev. 279 (1964). As Professor Thode points out, before adoption of rule 120a, any appearance by a nonresident defendant was a general appearance, which subjected the defendant to the jurisdiction of the Texas court under the applicable statutes (later superseded by rules 121, 122 and 123 of the Texas Rules of Civil Procedure), as interpreted and applied in *York v. State*, 73 Tex. 651, 11 S.W. 869 (1889), aff'd, *York v. Texas*, 137 U.S. 15, 11 S.Ct. 9, 34 L.Ed. 604 (1890). Consequently, a nonresident defendant was required either to defend the suit in Texas or to abandon his defense on the merits and attack the judgment on due process grounds if suit should be brought to enforce it in his home state.

This harsh rule was changed by rule 120a in only a limited respect. The rule permits a defendant to make a special appearance "for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant, on the ground that such party or property is not *amenable* to process issued by the courts of this state." (Emphasis added.) The rule of *York v. State* is not otherwise changed, as the following language of the rule makes clear: "Every appearance, prior to judgment, not in compliance with this rule is a general appearance." *Thode, supra,* at 313.

The key word in the rule is "amenable." Professor Thode interprets this word in its context as follows:

The words "not amenable to process issued by the courts of this state" can only be interpreted to mean that the special appearance is available solely to establish that the Texas court cannot, under the federal and state constitutions and the appropriate state statutes, validly obtain jurisdiction over the person or the property of the defendant with regard to the cause of action pled. Defective service or defective process, or even an attempt to bring the defendant before the court under the wrong statute does not authorize the use of the special appearance. If the defendant attempts to make a special appearance to raise any of these contentions, then his appearance is a general one and the rule of *York v. State* applies to him with full force.

*Id.* at 312, 313.

■ Professor Thode also points out that the special appearance cannot properly be used for the dilatory purpose of challenging defects or errors in the manner of obtaining jurisdiction over the person or property of the defendant. *Id.* at 313. For this purpose, a different procedure is available. Rule 122 provides:

If the citation or service thereof is quashed on motion of the defendant, such defendant shall be deemed to have entered his appearance at ten o'clock a. m. on the Monday next after the expiration of twenty (20) days after the day on which the citation or service is quashed, and such defendant shall be deemed to have been duly served so as to require him to appear and answer at that time, and if he fails to do so, judgment by default may be rendered against him.

Thus a nonresident defendant, like any other defendant, may move to quash the citation for defects in the process, but if he does so successfully, his only available relief is additional time to answer rather than dismissal of the suit.

■ From Professor Thode's analysis it would follow that insufficiency of the jurisdictional allegations of the petition does not properly affect amenability to process, but only the validity of the process actually employed. Logically, a defect that can be cured does not properly affect amenability because ordinarily the only result of sustaining an objection to such a defect is delay, even if the suit is dismissed, because the defect may be cured by filing a new suit and causing new process to be issued and served. *See Gourmet, Inc. v. Hurley,* 552

S.W.2d 509, 512 (Tex.Civ.App.—Dallas 1977, no writ). If the defendant appears and objects to a curable defect, he is entitled to the additional time provided by rule 122, but there is little justification for the further delay of a new filing and new process because he then has adequate notice of the suit and has submitted himself to the jurisdiction of the court under the rule of *York v. State, supra.* On the other hand, if the defendant shows that no matter what jurisdictional facts may be alleged, he is not amenable to Texas process because of his lack of the minimum contacts essential to due process, then the appropriate order is dismissal. According to Professor Thode, the defendant's acceptance of the burden both to plead and prove lack of amenability is the quid pro quo imposed for this limited exception to the rule of *York v. State.* Thode, *supra* at 319–322; *see Roquemore v. Roquemore*, 431 S.W.2d 595, 598–600 (Tex. Civ.App.—Corpus Christi 1968, no writ).

In our opinion, Professor Thode's analysis has not been repudiated by the supreme court. The leading case on pleading under article 2031b is *McKanna v. Edgar*, 388 S.W.2d 927 (Tex.1965). That case did not arise from a special appearance, but was a direct review by writ of error from a default judgment against a nonresident. The court held that in such a proceeding, the record must affirmatively show jurisdiction, and since the jurisdictional allegations of the petition were insufficient, no jurisdiction was shown. Chief Justice Greenhill refers to Professor Thode's analysis with approval. *McKanna, supra* at 928. The court remanded the case for trial under rule 123, which provides that when a judgment is reversed "because of *defective* service of process, no new citation shall be issued or served, but the defendant shall be presumed to have entered his appearance to the term of court at which the mandate shall be filed." (Emphasis added.) *Id.* at 930.

Although *McKanna*, as we interpret it, dealt with defective process rather than lack of amenability, it has been uniformly interpreted by the courts of civil appeals as applying also to special appearances and as requiring dismissal if the defendant success-fully challenges the plaintiff's jurisdictional allegations at a special appearance hearing. For instance, in *Burgess v. Ancillary Acceptance Corp.*, 543 S.W.2d 738, 740 (Tex. Civ.App.—El Paso, 1976, writ ref'd n.r.e.), the El Paso court of Civil Appeals affirmed a dismissal for defects in the jurisdictional allegations without considering the evidence at the special appearance hearing. In *Burgess* the court relied also on *Curry v. Dell Publishing Co.*, 438 S.W.2d 887, 890 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r. e.), in which a motion to dismiss for want of jurisdiction was held to be properly sustained on the ground that the jurisdictional allegations of the petition were insufficient to justify service on the Secretary of State.

This interpretation of *McKanna* was carried even further in *Gathers v. Walpace Co., Inc.*, 544 S.W.2d 169, 170 (Tex.Civ. App.—Beaumont 1976, writ ref'd n.r.e.). There the Beaumont Court of Civil Appeals held that although the petition alleged in general terms the facts required by article 2031b, dismissal was proper because the petition did not also allege that the cause of action asserted arose out of the defendant's purposeful acts in this state, thus meeting the minimum contacts test stated in *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966). It is one thing to hold, as in *McKanna*, that the fact of "doing business" must be alleged under article 2031b and quite another to hold that the petition must affirmatively show the additional facts necessary to meet the minimum contacts test. In *Gathers*, the court recognized the rule that the defendant has the burden of proof at the special appearance hearing, but held that rule inapplicable where the plaintiff has failed to plead all the necessary facts authorizing process under article 2031b, as limited by the minimum contacts test. In support of this ruling, the court cited *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 95 (Tex. 1973), a default case, in which the supreme court said that the petition "must allege facts which, if true, would make the defendant responsible to answer, . . . or, in the language of Rule 120a, contain allegations making the defendant amenable to process by the use of the long-arm statute."

The Beaumont court applied the same rule to a paternity case in which the defendant made a special appearance to challenge personal jurisdiction under another long-arm statute, section 11.051 of the Texas Family Code (Vernon Supp. 1980–1981). *In re D.N.S.*, 592 S.W.2d 35, 37 (Tex.Civ. App.—Beaumont 1979, no writ). There the trial court dismissed and the appellate court affirmed on the ground that the plaintiff had failed to allege the "three basic factors which should coincide" if jurisdiction is to be maintained over a nonresident under *O'Brien v. Lanpar Co., supra.*

A similar question was presented to the Eastland Court of Civil Appeals in *Mills v. Stinger Boats, Inc.*, 580 S.W.2d 106, 107–08 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.). In that case the plaintiff sued a foreign corporation and made allegations attempting to bring the case within article 2029 of the Texas Revised Civil Statutes (Vernon 1969), which permits service on an agent of a foreign corporation within the state. The trial court sustained the defendant's challenge to the applicability of article 2029 and dismissed the suit. The appellate court affirmed, observing that it did not reach the minimum contacts question discussed in *O'Brien v. Lanpar Co., supra*, since the petition did not allege jurisdictional facts within article 2031b, and, consequently, "plaintiff failed to properly serve the defendant."

■ None of these cases addressed the exact question now before us, since here there was no attack in the trial court on the jurisdictional allegations of the petition. The defendant presented evidence tending to negate plaintiff's allegations under article 2031b, that defendant was "doing business" in Texas, and on this appeal plaintiff attempts to establish jurisdiction on a ground not alleged, namely the consent-to-jurisdiction provision in the contract. A decision bearing directly on this question is *Menchaca v. Chrysler Life Insurance Co.*, 604 S.W.2d 287, 289 (Tex.Civ.App.—San Antonio 1980, no writ). There the petition alleged the commission of a tort in Texas, and the trial court's order of dismissal was reversed because both the pleading and the proof were sufficient to establish the facts required by article 2031b and to meet the tests of personal jurisdiction required by *O'Brien v. Lanpar Co., supra.* However, on appeal the plaintiff relied also on evidence at the special appearance hearing that the defendant corporation held a certificate of authority to transact business in Texas. The San Antonio Court of Civil Appeals said that since this basis for asserting in personam jurisdiction was not alleged in the petition, the holding in *Gathers v. Walpace Co., Inc., supra*, precluded its consideration. In this respect the *Menchaca* decision is contrary to Professor Thode's view that the defendant cannot meet his burden of showing lack of amenability by proving only that the jurisdictional facts do not fall within the specific statute under which the plaintiff's petition attempts to allege jurisdiction, but must also carry the burden of demonstrating that he is not amenable to process issued pursuant to any Texas statute. *Thode, supra*, at 122.

In view of this uniform interpretation of rule 120a by the Courts of civil appeals, we conclude that according to the prevailing Texas authority, the defendant's burden at the special appearance hearing is only to overcome the jurisdictional allegations of the petition, either by showing their insufficiency or by proof negating the jurisdictional facts alleged. Consequently, the defendant has no burden to negate other possible grounds of jurisdiction that may be raised by evidence at the hearing. Application of that rule in the present case requires us to hold that the trial court did not err in disregarding evidence of the contractual provision consenting to the jurisdiction of the Texas courts insofar as that provision is now urged as an independent ground of in personam jurisdiction.

We recognize that the supreme court has never spoken directly on this point, although it has refused writ of error with the notation "no reversible error" in several of the cases cited. A holding contrary to those cases, however, would introduce uncertainty and confusion into an area of civil practice

in which certainty and consistency are essential. If the supreme court should adopt Professor Thode's interpretation of rule 120a, either by an authoritative decision or by a clarifying amendment to that rule, no uncertainty would result and consistency would be achieved. The same result cannot be accomplished by this court. Moreover, we conclude that it would be unfair for us to attempt to change the rule on this appeal because when defendant made its special appearance, it was entitled to assume under the Texas precedents that it had no burden to negate any ground of jurisdiction other than the ground alleged in the petition. We do not know what evidence defendant would have presented to avoid the consent-to-jurisdiction provision of the contract if it had been alleged. Consequently, we conclude that our only proper course is to follow the decision in *Gathers v. Walpace, supra,* and the other precedents cited.

Because of this holding, we do not reach the question of whether the consent-to-jurisdiction provision is valid under such authorities as *M. S. Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972), and *National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315–16, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964); *accord: Smith, Valentino & Smith, Inc. v. Superior Court of Los Angeles,* 131 Cal.Rptr. 374, 551 P.2d 1206, 1209 (1976); *Reeves v. Chem. Industrial Co.,* 262 Or. 95, 495 P.2d 729, 731–32 (1972); *Central Contracting Co. v. C. E. Youngdahl & Co., Inc.,* 418 Pa. 122, 209 A.2d 810, 816 (1965); *Wm. H. Muller & Co., Inc. v. Swedish American Line Ltd.,* 224 F.2d 806, 808 (2d Cir. 1955); *Leasewell, Ltd. v. Jake Shelton Ford, Inc.,* 423 F.Supp. 1011, 1015 (S.D. W.Va.1976). Neither do we consider whether such a provision falls within the rule invalidating contractual stipulations concerning venue, as declared in *Fidelity Union Life Insurance Co. v. Evans,* 477 S.W.2d 535 (Tex.1972).

### Minimum Contacts

■ Plaintiff also contends that as a matter of law defendant's contacts with Texas were sufficient to satisfy due process under the minimum contacts test established by *O'Brien v. Lanpar Co.,* 399 S.W.2d 340 (Tex.1966), and *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977). According to *U-Anchor,* the plaintiff's unilateral performance of the contract in Texas is not enough, even when coupled with the defendant's payments in Texas pursuant to a contract requiring such payments; defendant must also have purposely done some act or consummated some transaction in Texas. *U-Anchor, supra,* at 762, 763. In this case the evidence establishes that defendant did nothing in Texas. Neither defendant's telephone calls to plaintiff in Texas before the visit by plaintiff's sales representative in Oregon, nor defendant's possible mailing of the contract from Oregon to Texas (which is not clearly shown by this record) constitutes purposeful activity of defendant in Texas, even though the contract provides that it is not effective until accepted and executed by plaintiff in Texas. *Sun–X International Co. v. Witt,* 413 S.W.2d 761, 767 (Tex.Civ.App.—Texarkana 1967, writ ref'd n.r.e.); *see Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596, 604 (7th Cir. 1979), *cert. denied* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). The only other circumstance relied on is the provision that the contract shall be deemed entered into in Texas and shall be interpreted under the laws of Texas. The applicability of the laws of the forum to a particular dispute does not in itself give the court jurisdiction over the parties to that dispute. *Shaffer v. Heitner,* 433 U.S. 186, 215, 97 S.Ct. 2569, 2585, 53 L.Ed.2d 683 (1977).

■ Although it is clear under the above authorities that none of these circumstances, taken separately, would suffice for personal jurisdiction, the question remains whether they are sufficient, when taken together, to satisfy due process. This question is difficult because of the vagueness and subjectivity of the constitutional standard of "traditional notions of fair play and substantial justice" established in *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945),

and adopted as *O'Brien* and *U-Anchor. See U-Anchor, supra,* at 764. In applying such a standard, we should not substitute our own subjective determination for that of the trial judge unless we are persuaded that his decision is clearly wrong. Therefore, we give weight to the trial court's findings and conclusions that defendant did not purposely avail itself of the privilege of conducting activities in Texas, that defendant did not purposely invoke the benefits and protection of Texas laws, that defendant had insufficient minimum contacts with Texas, and that it would not be fair and reasonable to require defendant to come into Texas to defend this action. We cannot say that these conclusions are contrary to the evidence in the present record. Consequently, the trial court's order of dismissal must stand.

Affirmed.

AKIN, Justice, dissenting.

I cannot agree that the burden was upon the plaintiff in the trial court to assert contractual consent to jurisdiction in Texas, but rather under rule 120a the burden of proof was upon the nonresident defendant to establish lack of amenability of service of process issued by a Texas court. Neither can I agree that plaintiff waived contractual consent to jurisdiction in Texas because of its failure to plead this ground because Tex.R.Civ.P. 120a places the burden upon the defendant to establish lack of amenability to process rather than the validity of the process issued and served. Additionally, the consent to jurisdiction was before the court by way of defendant's evidence, which was specifically read to the court by counsel. Accordingly, I must dissent.

The real question is whether a nonresident defendant may prove the invalidity of the process issued and served as distinguished from lack of amenability to Texas process. In my view, insufficiency of plaintiff's jurisdictional allegations in his petition affects the validity of process rather than amenability to process under rule 120a. Consequently, I do agree with the majority's analysis approving the position of Professor Thode with respect to rule 120a and their comment that if the question was one of first impression, they would adhere to Professor Thode's analysis of rule 120a, which view was cited with approval by the supreme court in *McKanna v. Edgar,* 388 S.W.2d 927, 928 (Tex.1965), although that case concerned defective process rather than amenability. Furthermore, the supreme court in *McKanna* reversed the default judgment but remanded so that the nonresident defendant could answer and defend on the merits under rule 122.

I disagree with the majority, however, in following cases incorrectly decided by several courts of civil appeals. Those courts misread *McKanna* and held that under rule 120a the plaintiff had the burden of pleading facts which would sustain jurisdiction over a nonresident defendant, rather than addressing the language of rule 120a, which establishes that the nonresident defendant must show lack of amenability to process, not merely defective process, at the hearing on his 120a plea.

The most often cited of these erroneously decided cases is *Gathers v. Walpace Company, Inc.,* 544 S.W.2d 169 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.). In *Gathers,* the court recognized rule 120a, but held that the nonresident defendant was not amenable to process in Texas because plaintiff failed to plead facts authorizing issuance of process under the long-arm statute. Thus, that court focused on whether the plaintiff's petition pleaded facts to invoke the long-arm statute rather than on rule 120a, which requires the nonresident defendant to plead and to prove lack of jurisdiction by a Texas court over his person. The result of that decision was to transfer the burden of proof on a rule 120a motion from the defendant to show that a Texas court did not have jurisdiction over the defendant to the plaintiff to plead and prove jurisdictional facts under the long-arm statute.

In my view, this holding is contrary to the language of rule 120a, which in pertinent part states:

Notwithstanding the provisions of Rules 121, 122 and 123, a special appearance may be made by any party either in person or by attorney *for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the court of this State.* [Emphasis added]

The *Gathers'* court, as well as several others, fails to give effect to the literal language of rule 120a, which requires the nonresident defendant to show lack of amenability to process. Where defective process exists, the proper procedure is for the defendant to move to quash. According to rule 122, should the service of process be quashed, "defendant shall be deemed to have entered his appearance at ten o'clock a. m. on the Monday next after the expiration of twenty days after the day on which the citation or service is quashed." Thus, under the rules, defective process may be cured but lack of amenability to process cannot.

All of these opinions misread *McKanna v. Edgar*, 388 S.W.2d 927, 928 (Tex.1965), which concerned defective process rather than amenability. *McKanna* did not arise on a special appearance but rather as a direct attack by writ of error from a default judgment against a nonresident. The supreme court held that the record must affirmatively show jurisdiction, and because the jurisdictional allegations were insufficient, no jurisdiction was shown. That court noted with approval Professor Thode's article and, consistent with Professor Thode's article, remanded the case for trial under rule 123, which provides that when a judgment is reversed "because of defective service of process, no new citation shall be issued or served, but the defendant shall be presumed to have entered his appearance to the term of court at which mandate was filed." *Id.* at 930.

Unfortunately, the erroneously decided courts of civil appeals cases cited in the majority's opinion, such as *Gathers,* have misapplied *McKanna* to lack of amenability under rule 120a rather than confining that holding to defective process situations. By misapplying *McKanna* to special appearances under rule 120a, those courts have authorized dismissal if the nonresident defendant challenges plaintiff's allegations of jurisdiction at the special appearance hearing, contrary to *McKanna.* At least, to be consistent with *McKanna,* those courts should have remanded so that the plaintiff could amend his pleadings to cure any irregularity, thus placing upon the nonresident defendant his proper burden of showing lack of amenability under rule 120a.

Although I agree that the law should be certain where possible, I cannot intellectually agree to follow decisions of courts of civil appeals, which have misread a supreme court decision, as well as the clear language of rule 120a. Instead, I would adhere to Professor Thode's analysis of rule 120a, overrule this court's opinion in *Castle v. Berg,* 415 S.W.2d 523, 526 (Tex.Civ.App.—Dallas 1967, no writ), and expressly decline to follow the other decisions set forth in the majority opinion which misread *McKanna* and rule 120a. As Mr. Justice Frankfurter stated in *Henslee v. Union Planters National Bank & Trust Co.,* 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259, 264 (1948): "Wisdom too often never comes, and so one ought not to reject it merely because it comes late."