**TEMPERATURE SYSTEMS, INC., Appellant,**

v.

**BILL PEPPER, INC. d/b/a Wm. Pepper & Associates, Appellee.**

No. 05–92–00054–CV.

Court of Appeals of Texas, Dallas.

Feb. 19, 1993.

Rehearing Denied April 6, 1993.

William L. Shirer, Steven D. Goldston, Dallas, for appellant.

Brian D. Melton, Dallas, for appellee.

Before BAKER, KINKEADE and BURNETT, JJ.

## OPINION

BURNETT, Justice.

Temperature Systems, Inc. (TSI) appeals from the trial court's order overruling its special appearance under rule 120a of the Texas Rules of Civil Procedure. In a single point of error, TSI contends that the trial court's overruling of its special appearance violates the Texas jurisdictional test and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Because we find that the trial court exercised jurisdiction over TSI consistent with the Texas jurisdictional test and the Due Process Clause, we overrule TSI's point of error. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL HISTORY

TSI is a Wisconsin corporation with its principal place of business in Wisconsin. TSI is a distributor of heating, ventilation, and air conditioning (HVAC) equipment. TSI primarily distributes equipment manufactured by Carrier. TSI purchases the Carrier equipment directly from Carrier's factories all across the United States. Car-

rier does not have a factory in Texas. TSI sells equipment in Wisconsin, Michigan, and northern Illinois. TSI does not advertise or solicit business in Texas. TSI is not licensed to do business in Texas and does not have any offices, agents, representatives, property, or any other assets in Texas.

Since 1975, TSI has maintained an inter-distributor relationship with other Carrier distributors across the United States, including Texas. Pursuant to this relationship, a Carrier distributor needing a particular piece of equipment not in stock at the Carrier factories can obtain the equipment from other Carrier distributors. TSI transfers equipment to and purchases equipment from Carrier distributors in Texas under this distributor relationship. Between August 1988 and June 1990, TSI purchased $45,000 worth of Carrier equipment from Carrier distributors in Texas. TSI also purchased $450,000 worth of non-Carrier HVAC equipment from other Texas residents between 1987 and 1990.

Bill Pepper, Inc. (Pepper) is a Texas corporation with its principal place of business in Texas. Pepper is an executive search and recruiting firm working primarily in the HVAC industry. Pepper places candidates with HVAC companies in twenty-one states, including Texas and Wisconsin. Pepper derives eighty-five percent of its income from states other than Texas. Pepper performs all of its placement work from its office in Texas.

Pepper and TSI entered into an oral contract whereby Pepper agreed to search for candidates for sales representative positions at TSI and TSI agreed, for any candidate presented by Pepper and hired by TSI, to pay thirty percent of the candidate's first year earnings as Pepper's fee. Pepper sent TSI three candidates. All of the candidates, including Steve Ross, a Wisconsin resident, were rejected by TSI. About five months after rejecting Ross, TSI hired Ross. When Pepper learned that TSI hired Ross, Pepper demanded its thirty percent fee from TSI. TSI refused to pay the fee. Pepper filed suit for breach of contract against TSI in Dallas County, Texas.

In paragraph II of Pepper's original petition, under the subheading "Basis for Jurisdiction in Texas," Pepper alleged:

Defendant, TEMPERATURE SYSTEMS, INC., is a Wisconsin corporation with its principal place of business in Madison, Wisconsin. TSI has not qualified to do business in the State of Texas. TSI is a nonresident of Texas that has engaged in business in Texas within the meaning of Art. 17.042 of the Texas Civil Practice & Remedies Code by entering into an oral contract on September 1, 1988 with Wm. Pepper & Associates as set forth in detail below, which contract was performable in part in the State of Texas by Wm. Pepper & Associates' performance of a search for a sales position at TSI and particularly by the recruiting of Steven Ross from Dallas, Texas, obtaining a complete background of Steven Ross on January 7, 1989, scheduling an interview for Steven Ross with TSI in March, 1989, together with seventeen (17) telephone conferences from August 4, 1988 to February 2, 1989 placed by William M. Pepper in Dallas, Texas to Terry Riker and Steven Ross and several other other [sic] candidates and forwarding numerous items of correspondence from Dallas, Texas to TSI. In addition TSI was obligated under the contract to make payment to Wm. Pepper & Associates in Dallas, Texas.

TSI filed a special appearance. After a hearing, the trial court overruled TSI's special appearance. The case proceeded to trial. The jury found for Pepper. TSI appeals only the order overruling its special appearance.

## STANDARD OF REVIEW

■ The trial court made no findings of fact and conclusions of law in connection with its ruling on the special appearance. The parties did not request findings or conclusions pursuant to Rule 296 of the Texas Rules of Civil Procedure. *See* TEX. R.CIV.P. 296. Under these circumstances, the trial court's judgment implies all necessary fact findings in support of the judgment. *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex.1987); *Bur-*

*nett v. Motyka,* 610 S.W.2d 735, 736 (Tex. 1980). We must affirm the trial court's judgment if it can be upheld on any legal theory that finds support in the evidence. *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex. 1978), *overruled on other grounds, Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768, 770 (Tex.1989).

## BURDEN OF PROOF

■ TSI had the burden at its special appearance hearing to negate all bases of personal jurisdiction. TEX.R.CIV.P. 120a; *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985); *Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 438 (Tex.1982); Thode, *In Personam Jurisdiction; Article 2031b, The Texas "Long Arm" Jurisdiction Statute; And the Special Appearance to Challenge Jurisdiction in Texas and Elsewhere,* 42 TEX. L.REV. 279, 322 (1964). A defendant must negate all bases of jurisdiction even if there are no jurisdictional allegations in a plaintiff's petition. *Siskind,* 642 S.W.2d at 438; *Steve Tyrell Prod., Inc. v. Ray,* 674 S.W.2d 430, 436 (Tex.App.—Austin 1984, no writ). In such a case, proof that a defendant is a nonresident is sufficient to meet this burden. *Id.* However, proof of nonresidency is not enough when a plaintiff alleges jurisdictional facts. *Id.* Then, a defendant must also negate the jurisdictional facts alleged. *Id.*

## BASES FOR JURISDICTION

■ There are two types of jurisdiction: specific and general. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 358 (Tex.1990). Specific jurisdiction arises when a defendant commits some act in Texas which gives rise to the cause of action asserted against him. *Id.* General jurisdiction arises when a defendant's contacts with Texas are continuing and systematic. In general jurisdiction cases, the court can exercise jurisdiction over a defendant even if the cause of action asserted does not arise from the defendant's acts in Texas. *Id.* In its petition, Pepper alleged specific jurisdiction based upon the oral contract with TSI performable in Texas. *See* TEX.

CIV.PRAC. & REM.CODE ANN. § 17.042(1) (Vernon 1989). Pepper admitted at the special appearance hearing that "[i]t is true that this is a contract case."

■ On appeal, Pepper argues two additional bases for jurisdiction. Pepper alleges specific jurisdiction based upon TSI's commission of a tort in Texas under section 17.042(2) of the long arm statute. *See* TEX. CIV.PRAC. & REM.CODE ANN. § 17.042(2) (Vernon 1989). We find no allegations in Pepper's petition that TSI committed a tort in Texas. Pepper's petition alleges a tort against TSI under article 5221a–7 of the Texas Revised Civil Statutes; however, it does not allege that this tort was committed in Texas. *See Steve Tyrell Prod.,* 674 S.W.2d at 433–34. At the special appearance hearing, there was no evidence of any specific facts which showed that TSI committed some purposeful act in Texas giving rise to a separate tort claim against TSI. Counsel for Pepper admitted that Pepper's claims against TSI were contract claims, and the evidence at the special hearing showed that Pepper's claims against TSI were based upon various acts of TSI which allegedly breached the oral contract. Since Pepper did not allege specific facts and did not introduce evidence to support a claim for jurisdiction based upon the commission of a tort in Texas, TSI negated this basis for jurisdiction by simply showing it was a nonresident. *See Siskind,* 642 S.W.2d at 438; *Steve Tyrell Prod., Inc.,* 674 S.W.2d at 436.

■ Pepper also alleges general jurisdiction on appeal based upon TSI's continuing and systematic contacts with Texas. Pepper contends that TSI's purchases from Texas residents and its relationship with Carrier distributors in Texas constitute continuing and systematic contacts with Texas. There are no pleadings to support Pepper's general jurisdiction claim. Pepper, however, introduced evidence of these specific facts giving rise to the claim of general jurisdiction at the hearing on the special appearance. TSI did not object to this evidence at the special appearance hearing. Accordingly, general jurisdiction was tried by consent, and TSI has the

burden of negating the specific facts which form the basis of Pepper's general jurisdiction claim. TEX.R.CIV.P. 167; *3–D Elec. Co. v. Barnett Constr. Co.*, 706 S.W.2d 135, 138 n. 2 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *see also Siskind*, 642 S.W.2d at 438; *Steve Tyrell Prod., Inc.*, 674 S.W.2d at 436.[1]

It is undisputed that TSI is a nonresident; therefore, all bases for jurisdiction not specifically pleaded or otherwise raised by the evidence have been negated. The only bases for jurisdiction that have been pleaded or raised by the evidence are specific jurisdiction based upon the contract and general jurisdiction based upon TSI's purchases of equipment from Texas residents and relationship with Texas Carrier distributors. We now consider the only issue on appeal: whether TSI met its burden of negating specific jurisdiction based upon the contract under section 17.042(1) and general jurisdiction based upon TSI's purchases from Texas residents.

## EXERCISE OF JURISDICTION BY A TEXAS COURT

■ A Texas court may exercise jurisdiction over a nonresident if (1) the Texas long arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees. *Schlobohm*, 784 S.W.2d at 356; *see* TEX.CIV.PRAC. & REM. CODE ANN. §§ 17.041–.093 (Vernon 1986).

### The Texas Long Arm Statute

■ The Texas long arm statute lists actions which constitute "doing business" in Texas. TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1986). The nonresident who takes such action will be amenable to service of process by the secretary of state. TEX.CIV.PRAC. & REM.CODE ANN. § 17.044 (Vernon 1986). Under section 17.042, a nonresident does business in Texas if he enters into a contract with a Texas resident performable in whole or in part in Texas. TEX.CIV.PRAC. & REM.CODE ANN. § 17.042(1)

(Vernon 1986). Because we find that TSI entered into a contract with Pepper, a Texas resident, which was performed in part in Texas by Pepper, the Texas long arm statute authorizes the exercise of jurisdiction over TSI.

### Federal Requirements of Due Process

■ We must now determine whether the exercise of jurisdiction under the long arm statute is consistent with due process. The broad language of the long arm statute's "doing business" requirement allows the statute to reach as far as the federal constitution permits. *U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). Under the federal constitutional test of due process, there must be a showing that (1) the defendant has established minimum contacts with the forum state, and (2) the assertion of jurisdiction will not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ The Texas Supreme Court has established a three-part jurisdictional test based upon the federal test. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230–31 (Tex.1991); *Schlobohm*, 784 S.W.2d at 358. First, the nonresident must have purposefully established "minimum contacts" with Texas. There must be a "substantial connection" between the nonresident and Texas arising from conduct of the nonresident purposefully directed toward Texas. Second, when specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident's contacts with Texas. When general jurisdiction is asserted, there must be continuous and systematic contacts between the nonresident and Texas. General jurisdiction requires substantial activities by the nonresident in Texas. Third, the assertion of jurisdiction

---

**1.** We disagree with this result that a defendant has the burden to negate jurisdictional facts which are not pleaded but which are subsequently raised by the evidence. However, we recognize that this is the law in Texas, and we are bound to follow it.

must comport with fair play and substantial justice.

### Specific Jurisdiction based upon the Contract

With respect to the first part of the Texas jurisdictional test, Pepper argues that TSI has minimum contacts with Texas because it purposefully directed activities towards Texas by entering into a contract with Pepper, a Texas resident, performable in whole or in part in Texas. Pepper argues that the contract is performable in Texas based upon the unilateral acts of Pepper in (1) making seventeen phone calls from Texas to TSI, (2) performing a search from Texas for TSI, (3) recruiting Steve Ross, a Wisconsin resident, from Texas, (4) conducting a background check of Steve Ross from Texas, (5) checking Ross' references from Texas, (6) forwarding Ross' resume to TSI from Texas, (7) scheduling an interview for Steve Ross from Texas, and (8) forwarding numerous items of correspondence from Texas to TSI.

■ The essential goal of the minimum contacts analysis is to protect the defendant. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980). We must focus on the intentional activities and expectations of the defendant in deciding whether there is jurisdiction. *Schlobohm*, 784 S.W.2d at 357. The defendant must do something purposeful to avail himself of the privilege of conducting activities in the forum, thus invoking the benefit and protection of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Those activities must justify a conclusion that the defendant should reasonably anticipate being called into court there. *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. Thus, it is the actions of the defendant, not the plaintiff, which are relevant to a minimum contacts analysis. *Kulko v. California Superior Court*, 436 U.S. 84, 93–94, 98 S.Ct. 1690, 1697–98, 56 L.Ed.2d 132 (1978).

■ A plaintiff's unilateral actions in soliciting a contract or in carrying out the terms of a contract are irrelevant to a

due process consideration. *U–Anchor Advertising, Inc.*, 553 S.W.2d at 763. An individual's contract with an out-of-state party alone cannot establish sufficient minimum contacts in the other party's home. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985).

TSI did not perform any part of the contract with Pepper in Texas. The fact that TSI entered into a contract with a Texas resident which was performed by the Texas resident in Texas does not show that TSI has sufficient minimum contacts with Texas. We find that the unilateral acts of Pepper in performing the contract with TSI in Texas are insufficient to show that TSI purposefully established minimum contacts in Texas under the first element of the Texas jurisdictional test.

■ Pepper argues that TSI did perform part of the contract in Texas because TSI was obligated to make payment to Pepper in Texas. Nowhere in the correspondence or other communications between TSI and Pepper is there a requirement that the contingent fee contemplated by the contract be paid to Pepper in Texas. When a contract requires payment of money but does not specify the place of payment, the place of payment is the domicile of the payor. *Carbonit Houston, Inc. v. Exchange Bank*, 628 S.W.2d 826, 831 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Thus, TSI did not perform part of the contract in Texas by being required to make payment in Texas.

By entering into the contract with Pepper, TSI did not purposefully establish minimum contacts with Texas under the first element of the Texas jurisdictional test. Because we find that the contract in this case does not establish minimum contacts under the first element of the Texas jurisdiction test, we need not consider the other two elements with respect to the claim of specific jurisdiction based upon the contract.

### General Jurisdiction

■ Pepper additionally argues, under general jurisdiction, that TSI has minimum

contacts with Texas to meet the first part of the Texas jurisdictional test because it purposefully directed activities towards Texas by purchasing equipment from Texas residents and maintaining a distributor relationship with Carrier distributors in Texas. TSI purchased almost $500,000 worth of equipment from Texas residents, including Carrier distributors and non-Carrier distributors, between 1987 and 1990. Since 1975, TSI has maintained its distributor relationship with Carrier distributors in Texas, pursuant to which TSI transfers equipment to and purchases equipment from Texas Carrier distributors. We find that TSI's purchases from Texas residents and relationship with Texas Carrier distributors establish minimum contacts between TSI and Texas because such activities constitute purposeful availment of the privilege of conducting business in Texas so that TSI should reasonably anticipate being called into court in Texas. *See Schlobohm,* 784 S.W.2d at 359; *Design Info. Sys. v. Feith Sys. & Software, Inc.,* 801 S.W.2d 569, 571 (Tex.App.—Fort Worth 1990, no writ).

We find that TSI's purchases of equipment from Texas residents and distributor relationship with Texas Carrier distributors are continuing and systematic contacts between TSI and Texas so as to meet the second prong of the Texas jurisdictional test for general jurisdiction. In the three years between 1987 and 1990 alone, TSI purchased a large amount of equipment from Texas residents. The distributor relationship with Texas Carrier distributors has existed since 1975. There is no evidence that TSI's purchases from Texas residents and distributor relationship with Texas Carrier distributors will cease. TSI's contacts with Texas are continuing and systematic because TSI's activities in Texas are substantial. Based upon TSI's contacts with Texas, TSI has a general presence in Texas. *See id.*

In determining the third prong of the Texas jurisdictional test, whether personal jurisdiction comports with fair play and substantial justice, we consider the following factors: (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Guardian Royal Exch.,* 815 S.W.2d at 228. TSI has not shown that it will suffer undue burden if it has to defend this suit in Texas. In fact, TSI's continuing and systematic contacts with Texas are such that TSI could expect to be called into court in Texas. Texas has a greater interest in this case in protecting its resident, Pepper, from the alleged conduct of TSI in breaching the oral agreement. Pepper, not TSI, alleges it has been wronged by TSI's acts based upon acts Pepper performed in Texas. We find that the record shows that exercising general jurisdiction over TSI in this case comports with fair play and substantial justice.

## CONCLUSION

TSI met its burden of negating specific jurisdiction under the contract as alleged by Pepper but did not negate general jurisdiction based upon the purchases of equipment from Texas residents and the distributor relationship with Texas Carrier distributors. Therefore, the trial court's judgment can be upheld upon the legal theory of general jurisdiction. We overrule TSI's point of error.

We affirm the trial court's judgment.

KINKEADE, Justice, dissenting.

I respectfully dissent to the majority opinion in this case. I would grant the motion for rehearing because the trial court had no in personam jurisdiction over Temperature Systems, Inc. (TSI).

The majority correctly held that TSI had the burden at its special appearance hearing to negate all bases of jurisdiction. The majority also correctly held that a defendant must negate all bases of jurisdiction even if there are no jurisdictional allegations in a plaintiff's petition. In such a case, proof that a defendant is a nonresi-

dent is sufficient to meet this burden; however, proof on nonresidency is not enough when a plaintiff alleges jurisdictional facts. When a plaintiff alleges jurisdictional facts, a defendant must also negate these jurisdictional facts. Where the majority errs is in the holding that a defendant must negate jurisdictional facts not pleaded but tried by consent at the special appearance hearing.

In *TM Productions, Inc. v. Blue Mountain Broadcasting Co.*, 623 S.W.2d 427 (Tex.Civ.App.—Dallas 1981), *writ ref'd n.r.e. per curiam*, 639 S.W.2d 450 (Tex. 1982), this Court held that the defendant's burden at the special appearance hearing is only to negate the jurisdictional allegations of the petition. *TM Prods.*, 623 S.W.2d at 432. Consequently, the defendant has no burden to negate other jurisdictional facts that may be raised by the evidence at the hearing. *Id.*

The majority would argue that this holding in *TM Productions* was overruled by the Texas Supreme Court in *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199 (Tex.1985). The Texas Supreme Court, however, specifically held that it overruled *TM Productions* and other cases only to the extent that they held that a nonresident defendant does not make a general appearance by contesting defective jurisdictional allegations, defective service of process, and defects in the citation in a special appearance. *Kawasaki Steel Corp.*, 699 S.W.2d at 203. The court in *Kawasaki Steel Corp.* held that when a nonresident defendant complains of jurisdictional allegations, service of process, or citation prior to or in a special appearance, the nonresident defendant makes a general appearance and waives his right to assert that the court does not have jurisdiction over him. *Id.* A nonresident defendant must make these complaints by way of a motion to quash or other means which constitute a general appearance. *Id.* The Texas Supreme Court left intact the portion of the opinion in *TM Productions* holding that a nonresident defendant need only negate those jurisdictional facts pleaded and not those tried by consent. *See TM Prods.* 623 S.W.2d at 432.

Pepper did not plead facts that gave rise to general jurisdiction as a basis for jurisdiction over TSI. Because the holding of *TM Productions* that a defendant does not have to negate jurisdictional facts not pleaded is still the law, I would hold that TSI had no burden to negate the facts regarding general jurisdiction raised by the evidence at the special appearance hearing. Accordingly, TSI's proof of nonresidency status was sufficient to negate general jurisdiction as a basis for jurisdiction.

TSI met its burden of negating all bases of jurisdiction. Therefore, the trial court should have sustained TSI's special appearance.