## GILBERT v. GULF OIL CORPORATION.

District Court, S. D. New York.

July 30, 1945.

Max J. Gwertzman, of New York City, for plaintiff.

Matthew S. Gibson, of New York City (Archie D. Gray, of Houston, Tex., and Fred J. Locker, of New York City, of counsel), for defendant.

LEIBELL, District Judge.

Plaintiff sues the defendant in tort claiming that through the defendant's negligence in delivering gasoline at plaintiff's warehouse, located at Lynchburg, Virginia, the warehouse took fire and was destroyed with most of its contents. The complaint alleges four claims or causes of action. Plaintiff seeks damages in the first cause of action in the sum of $41,899.10 for the destruction of plaintiff's warehouse; in the second, $3,602.40 for damages to plaintiff's merchandise and fixtures; in the third, $300,000 for damages to the property of plaintiff's customers whose goods were in plaintiff's custody and control; and in the fourth, $20,038.17 for loss of the use of the warehouse, loss of profits and for expenditures in attempting to salvage customer's property.

Plaintiff is a resident of the City of Lynchburg, Virginia, where the warehouse was located and the goods were stored. The majority of his customers were residents of that section of Virginia. The defendant corporation is a resident of the State of Pennsylvania, but through a certificate filed with the New York Secretary of State was authorized to do business within the State of New York and is actually doing business here in the Borough of Manhattan. Defendant, in like manner, is legally authorized to do business in the State of Virginia.

The gasoline which was being delivered at the plaintiff's warehouse at the time of the fire, had been ordered in the State of Virginia, and the delivery was being made by a distributor, Jennings-Watts Oil Co., Inc., also a resident of the State of Virginia, doing business in the City of Lynchburg. The fire took place March 8, 1944. The complaint was filed in this Federal Court on May 15, 1945.

The defendant has moved, through an order to show cause, for an order dismissing the complaint filed herein:

"* * * upon one or the other or both of the following grounds:

"1. That the venue is improper, as the plaintiff is a non-resident of this district and state, the defendant is a corporation organized under the laws of the Commonwealth of Pennsylvania, the alleged cause of action sounds in tort and arose outside of this state and district, to wit, in the State of Virginia, and said alleged cause of action did not arise out of, or have any connection whatsoever with, any business transacted by the defendant in this state and district; and

"2. That jurisdiction of this action should not be assumed by this court because:

"a. The customers of the plaintiff whose property was alleged to have been damaged and destroyed number approximately 350; all of them reside in the City of Lynchburg, Virginia, or vicinity and not in the State of New York or within the jurisdiction of this court or within the reach of its processes; and many of them will be necessary and material witnesses for the defendant;

"b. There are numerous lay witnesses, including firemen, police officers, and other municipal employees, as well as contractors and engineers, whose testimony will be material and necessary on behalf of the defendant, and all these persons reside in and about the City of Lynchburg, Virginia, and are beyond the reach of the processes of this court:

"c. It will be necessary for the defendant in the defense of this action to call as witnesses certain agents, servants, officers, and employees of a Virginia corporation, to wit, the Jennings-Watts Oil Co., Inc. and all of such agents, servants, officers and employees reside in the State of Virginia, outside the jurisdiction of this court and beyond the reach of its processes; and said

corporation itself may well be a necessary or proper party defendant in this action, for the reason that defendant will show that the negligence alleged in the complaint, if any, was committed by an employee of said corporation and not by an employee of defendant;

"d. Upon the trial it will be necessary to prove the ordinances of the City of Lynchburg, Virginia and numerous applicable statutes and court decisions of the State of Virginia; and

"e. There are available to the plaintiff in the city of his residence, Lynchburg, Virginia, both state and federal courts with sufficient jurisdiction to entertain this action, to summon before it and hear personally all material witnesses, to view the premises, and to reach with process all necessary and proper parties plaintiff and defendant; * * *."

I have concluded that the venue of the action is not improper for any technical reason, but that for good and sufficient reasons hereinafter stated this Court in the exercise of its discretion should decline to assume jurisdiction of this action.

The plaintiff, in opposing the defendant's motion, states that on March 8, 1944, the date when the explosion and fire took place, the plaintiff had purchased from the Gulf Oil Corporation 251 gallons of gasoline and the plaintiff annexes to an opposing affidavit a copy of the invoice. The invoice is important, but on this motion it aids the defendant rather than the plaintiff. It shows that the contract for the purchase of the gasoline was made and performed at Lynchburg in the State of Virginia.

Plaintiff states that the driver of the delivery wagon was in the office of the warehouse at the time of the explosion and was waiting for a delivery receipt for the gasoline to be signed by plaintiff; that plaintiff and his office manager, Mr. Judd, and various other employees of the plaintiff were in the warehouse; and that in plaintiff's opinion "no independent outside witness could be found who knew anything whatsoever regarding the delivery of the gasoline and the explosion and fire which took place." Plaintiff's affidavits also state that various engineers were brought from New York for the purpose of examining the premises and investigating the origin of the fire and the explosion; that plaintiff engaged the services of an appraiser, who does not reside in Lynchburg, Virginia, but resides in the State of North Carolina, to examine

the damage to the goods of plaintiff's customers. Plaintiff also asserts that a great many of the customers who had property in his warehouse and who sustained losses by reason of the explosion and fire, do not at the present time reside in Lynchburg, and that if their testimony is necessary it will have to be taken in various localities where they are now residing. In conclusion the plaintiff states that he "is prepared to bring all the employees who were present and have any knowledge of the origin of the fire and the explosion to appear as witnesses at the trial which has been brought in New York."

The attorney for the plaintiff has also filed an opposing affidavit herein, to which he has annexed a certificate from the Secretary of the State of New York showing that the defendant, when authorized to do business within the State of New York, designated the Secretary of State to accept service on behalf of the defendant corporation in New York state. Plaintiff's attorney argues from that that the defendant has thereby expressly consented to have service made upon the corporation in New York. He states:

"The plaintiff is prepared to bring to the trial all the employees who were present and who have any knowledge of the occurrence. In addition, the plaintiff is prepared to bring the fire officials who appeared after the occurrence and who made an investigation. They have likewise indicated that they would be delighted to come to New York to testify. Insofar as expert witnesses are concerned, none of them reside in Lynchburg, Va. or its vicinity. The engineers all come from New York and the appraiser on the damages resides in North Carolina. In regard to the 350 customers, very many of them no longer are in Lynchburg, Va. but have scattered because of the war over various parts of the country and some are even overseas. Their testimony will have to be taken by deposition in many cases and in view of the large amount of damages and the extremely long account which is involved, this case properly requires the service of a special master who can of course take hearings anywhere in the country if necessary."

He adds in a concluding paragraph that "there is no showing anywhere by the defendant that it could be served in Lynchburg, Va."

In reply affidavits the defendant shows that in June 1938 it filed with the Secretary of the Commonwealth of Virginia a power of attorney designating the Secretary of Virginia the lawful agent and attorney in fact of the defendant "upon whom all legal process against the defendant may be served and has authorized such secretary to enter an appearance in its behalf in any case or proceeding and has stipulated and agreed that any lawful process against the defendant which is duly served on said agent and attorney-in-fact shall be of the same legal force and validity as if served on the defendant." Defendant's attorney shows that the plaintiff may prosecute this action in the state of Virginia, that the United States District Court for the Western District of Virginia, sitting at Lynchburg, Virginia, has jurisdiction to entertain this action and can obtain jurisdiction of the person of the defendant, and that it will not be necessary for the plaintiff to sue the defendant in the State of Pennsylvania. Concerning the plaintiff's suggestion that the testimony of many of the customers could be taken on deposition herein before a Special Master, the defendant replies that it would be better if their testimony were made available by their presence in person in the state courts of the State of Virginia or in the Federal District Court there. The state courts hold sessions at Lynchburg, Virginia.

In his reply brief on this motion the plaintiff's attorney argues:

"In effect, the arguments raised by the defendant attempt to limit the plaintiff to suit solely in Lynchburg. The court can readily realize that this action, involving as it does, a claim for damages in an amount close to $400,000.00 is one which may stagger the imagination of a local jury, which is surely unaccustomed to dealing with amounts of such a nature, and furthermore, it may be difficult to obtain a jury which has not conceived preconceived notions concerning the facts in this case, which was widely publicized in the local newspapers. This may react in unfairness to either the plaintiff or the defendant."

These reasons are not too convincing and are far outweighed by the other considerations advanced by the defendant.

The defendant's attorney asserts that: "There is every good reason why this action should be prosecuted in the City of Lynchburg, Virginia, and no good or sufficient reason why it should be on the docket of this Court." I agree with that conclusion and I believe that this Court, in the

exercise of a sound discretion, should decline jurisdiction of this action. If this action had been brought in the New York Supreme Court that court, in the exercise of a sound discretion, could have declined jurisdiction. That has been the rule in the courts of New York State as appears from the decisions of its highest court. See, Gregonis v. Philadelphia & Reading Coal & Iron Co., 235 N.Y. 152, 139 N.E. 223, 32 A.L.R. 1, an opinion by Judge Crane, and Murnan v. Wabash R. Co., 246 N.Y. 244, 158 N.E. 508, 54 A.L.R. 1522, an opinion by Judge Pound.

■ Under Section 225 of the General Corporation Law of the State of New York, Consol. Laws N.Y. c. 23, an action may be maintained against a foreign corporation by a non-resident "where a foreign corporation is doing business within this state." But the statutory provision does not require the State Court to accept jurisdiction in a tort action between non-residents where the tort occurred in some other state. Judge Crane discusses the origin and history of the New York statute above referred to and he cites a number of cases which have reiterated the discretionary power of the State Court to decline to assume jurisdiction in a tort action between non-residents, where the cause of action arose outside the state. And this is so, even if the defendant is a foreign corporation legally authorized by the Secretary of State to do business within the State of New York.

The plaintiff's attorney argues that in the matter of assuming jurisdiction the Federal Court does not follow the State Court in a case of this kind, since the jurisdiction of the Federal Court is expressed by the laws of Congress and by the federal decisions. That particular point has been ruled upon to the contrary by the Circuit Court of Appeals for this Second Circuit in a recent case entitled Weiss v. Routh, 1945, 149 F.2d 193. In that case a dissenting stockholder of a Virginia corporation sued in this Court for the fair cash value of his stock, and did not avail himself of the remedy afforded by § 3822 of the General Corporation Law of Virginia (Code 1942). The District Court in this District had held that the dissenting shareholder was not limited to the remedies accorded him under the Virginia statute, and that this Court had the right to award him the fair cash value of his shares. 52 F.Supp. 418. The Circuit Court of Appeals, on its own motion,

raised the question of whether the United States District Court of the Southern District of New York should have accepted jurisdiction of the case. Assuming the fact that the plaintiff had a remedy in equity on which he could file suit in this District Court, the Circuit Court of Appeals went on to say—

"It follows that both the New York Supreme Court in which the action was originally brought, and the district court to which it was removed, had jurisdiction over the action at bar. It does not however also follow that they should have asserted that jurisdiction. That question was not raised before Judge Goddard or before us: we have taken the objection of our own motion, for upon it depends the propriety of entertaining the action at all. When a trial involves 'the internal affairs' of a corporation, the rule is that the court of a foreign forum will not assume jurisdiction over it; and the first question is whether the doctrine of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, applies: i.e. whether in deciding to accept or refuse jurisdiction we should follow the state law. It might be argued that those considerations which will set a court in motion are peculiar and personal to itself, and that it does not follow that what is enough to move a state court to act, should be enough to move a federal; or vice versa. Such a doctrine would, however, imply that the decision to accept jurisdiction is not controlled by any principle and may be at the judge's whim; and that would certainly be much too strong a statement. Here, as elsewhere, although judicial discretion does indeed imply that the limits are not rigidly fixed, it does not mean that there are none; and in dealing with the question at bar, we are to remember the purpose of conformity in 'diversity cases.' It is that the accident of citizenship shall not change the outcome: a purpose which extends as much to determining whether the court shall act at all, as to how it shall decide, if it does. For this reason it seems to us that we should follow the New York decisions." [149 F.2d 195.]

■ Applying that ruling to the facts in the case at bar, I am of the opinion that this Court should follow the law of the State of New York in this case where Federal jurisdiction is based upon the diversity of citizenship; and that I should exercise a sound discretion in deciding whether or not this Court should assume jurisdiction

over this action. For reasons hereinabove stated I am of the opinion that an order should be entered herein declaring that this Court refuses jurisdiction of this action, and directing that the complaint be dismissed for that reason.