In re SMITH BARNEY, INC., Relator.

No. 97–0423.

Supreme Court of Texas.

Argued Nov. 4, 1997.

Decided July 3, 1998.

Rehearing Overruled Oct. 15, 1998.

Thomas D. Cordell, Jeffrey T. Nobles, Kent Rutter, Houston, William P. Frank, Lawrence D. McCabe, New York City, for relator.

Michael D. Ford, Tom Bayko, David M. Bays, Houston, Paul Share, New York City, Jack G. Carnegie, Houston, for respondent.

HECHT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, OWEN and ABBOTT, Justices joined.

The issue in this mandamus proceeding is whether the district court abused its discretion by denying defendant's motion to dismiss the underlying litigation on the basis of *forum non conveniens*. We deny relief.

## I

Relator Smith Barney, Inc., a Delaware corporation with its principal place of business in New York, has been sued by five plaintiffs: The Privatization Group, Inc., a Texas corporation doing business only in New York ("TPGI–TX"); George Borey, a citizen of Poland residing in New York City; Pawel Jagiello, a citizen and resident of Poland; Jagiello's consulting firm, Pro–Invest International, Ltd., an entity organized under the law of Poland and doing business in that country; and Gornoslaski Bank Gospodarczy, a bank organized under Polish law and doing business in that country. Plaintiffs allege that Borey and Smith Barney agreed to form a joint venture they called Eagle Management Company to bid for selection as manager of one of fifteen National Investment Funds created by the Republic of Poland as part of its Mass Privatization Programme to sell state-owned enterprises to private investors, and that Pro–Invest and Gornoslaski Bank also became partners in the Eagle Management venture. Borey and his wife assigned their interest in Eagle Management to a New York corporation, The Privatization Group, Inc. ("TPGI–NY"), which they formed for that purpose. TPGI–NY's only directors were the Boreys, and its sole shareholder was Mrs. Borey. Plaintiffs allege that Smith Barney wrongfully withdrew from the venture and that as a result,

the venture's bid to become an investment fund manager ceased to be viable.

Consequently, Borey sought out an attorney to sue Smith Barney, and for reasons not entirely clear on this record, retained Texas counsel for that purpose. Borey then formed a Texas corporation, Borey International, merged TPGI–NY into it, and renamed it The Privatization Group, Inc. TPGI–TX has never had an office other than Borey's New York City apartment, and it has never done business in Texas. When asked in a deposition why he had formed TPGI–TX, Borey explained:

> The principal reason was that the energy business is now becoming, along with telecommunications, one of the principal hot areas in The Privatization Group, Inc. privatization business in a merger market, which is the business I'm involved in. I felt that since Texas is the seed of the energy business in the United States, since we're a small company, being incorporated in the State of Texas would help us from a marketing standpoint when we're dealing with Texas corporations.

Borey conceded, however, that TPGI–TX had never attempted to deal with any Texas corporations or do business in Texas.

Smith Barney removed the suit to federal court, asserting jurisdiction based on diversity of citizenship. TPGI–TX challenged this assertion, claiming that its principal place of business was in New York, where Smith Barney's is, so that one plaintiff's citizenship is the same as that of the defendant, thereby precluding the exercise of diversity jurisdiction.[1] Finding that TPGI–TX was "clearly a continuation of TPGI–NY", the federal court agreed with TPGI–TX and remanded the case to state court.

Smith Barney then moved to dismiss the case based on *forum non conveniens* grounds. Citing the factors set out in *Gulf Oil Corp. v. Gilbert*,[2] Smith Barney argued

1. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

2. 330 U.S. 501, 508–509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The Supreme Court identified the following considerations to be used in applying *forum non conveniens:*

> If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important

that New York was a more appropriate forum for the action because plaintiffs' pleadings and the affidavits and deposition testimony submitted with the motion established that all of the events and alleged wrongdoing occurred in New York; all operations of the joint venture were conducted, and were to have been conducted, in New York and Poland; all witnesses resided in New York, Poland, or Great Britain, and none was amenable to compulsory process in Texas; all documents relevant to the case were in New York; and New York law would apply to plaintiffs' causes of action. The only connection between the parties and Texas was Borey's creation of TPGI–TX, into which TPGI–NY was merged. In response, plaintiffs argued that according to the rule of *H. Rouw Co. v. Railway Express Agency*,[3] an action by a corporation qualified to do business in Texas cannot be dismissed on the basis of *forum non conveniens*. Plaintiffs did not, in their response, identify any other connection between the case and Texas. After hearing argument on Smith Barney's motion, the district court observed that "[t]his case doesn't belong here", but concluded that it was constrained by *Rouw* to deny the motion.

Smith Barney unsuccessfully sought mandamus relief from the court of appeals and

then moved for leave to file its petition for mandamus in this Court. We granted the motion, as well as Smith Barney's motion to stay proceedings in the district court, and set the case for oral argument.[4]

## II

*Rouw* involved an action for damages to seven railcars of strawberries shipped from Arkansas and Missouri to New York, Minnesota, and Pennsylvania. Plaintiff was an Arkansas corporation, which, after its claim arose, obtained a permit to do business in Texas. Defendant was a Delaware corporation also licensed to do business in Texas. Apart from the parties' authorization to do business in this State, the case had no connection with Texas. The district court dismissed the suit based on *forum non conveniens*. The court of civil appeals reversed, in its words, "[w]ith some reluctance".[5] The court relied primarily on two statutes generally applicable to corporations. One provided that a Texas corporation has the "power ... [t]o maintain and defend judicial proceedings."[6] The other provided that foreign corporations authorized to do business in Texas "shall have and enjoy all the rights and privileges conferred by the laws of this State on corporations organized under the laws of this State."[7] The court equated the

---

considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in

their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. (Footnote omitted.).

3. 154 S.W.2d 143 (Tex.Civ.App.—El Paso 1941, writ ref'd).

4. 40 Tex. Sup.Ct. J. 628, 634 (June 12, 1997).

5. *Rouw*, 154 S.W.2d at 145.

6. Act of April 24, 1874, 14th Leg., R.S., ch. 97, § 5, 1874 Tex. Gen. Laws 120, 121 (formerly codified as Tex.Rev.Civ. Stat. Ann. art. 1320 (1925)).

7. Act of May 4, 1897, 25th Leg., R.S., ch. 119, § 1, 1897 Tex. Gen. Laws 167 (formerly codified as Tex.Rev.Civ. Stat. Ann. art. 1532 (1925)).

*power* to maintain and defend judicial proceedings with the *right* to do so, reasoning that it would be "intolerable" to deny a domestic corporation the right to sue in its home state.[8]  Having concluded that domestic corporations have an absolute right to sue in Texas, regardless of whether the action had any other connection with the State, the court held that foreign corporations authorized to do business in Texas were statutorily accorded the same right.  By refusing the application for writ of error in *Rouw,* this Court adopted the court of civil appeals' opinion and judgment as its own.[9]

■ *Rouw*'s essential logic is flawed.  Corporations' power to sue and be sued says little about their right to do so, and absolutely nothing about the restrictions of the *forum non conveniens* doctrine.  The United States Supreme Court reached a similar conclusion six years after *Rouw* was decided in *Gulf Oil Corp. v. Gilbert.*[10]  There, a Virginia resident sued a Pennsylvania corporation in New York for negligently delivering gasoline, causing an explosion and fire that damaged the plaintiff's property in Virginia.  The defendant was licensed to do business in Virginia and New York and had designated agents for service of process in both states, so that the United States District Court in New York had jurisdiction and venue of the action.  The district court nevertheless dismissed the action on the basis of *forum non conveniens,* concluding that Virginia was a more appropriate forum.[11]  The court of appeals reversed, holding that because the district court had jurisdiction over the action and venue was proper, the court had no authority to dismiss based on *forum non conveniens.*[12]  The Supreme Court rejected the appellate court's view, explaining:

> The principle of *forum non conveniens* is simply that a court may resist imposition

upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.  These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy.  But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment.  A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.[13]

The doctrine of *forum non conveniens* applies even when a trial court's jurisdiction is clear.  The Court explained:

> [T]he defendant, by filing consent to be sued ... may be sued in the federal courts at the place where it has consented to be sued.  But the general venue statute plus the [defendant's consent to be sued] do not add up to a declaration that the court must respect the choice of the plaintiff, no matter what the type of suit or issues involved.  The two taken together mean only that ... it is proper for the federal court to take jurisdiction, not that the plaintiff's choice cannot be questioned.  The defendant's consent to be sued extends only to give the court jurisdiction of the person; it assumes that the court, having the parties before it, will apply all the applicable law, including, in those cases where it is appropriate, its discretionary judgment as to whether the suit should be entertained.[14]

The Court concluded that the district court did not abuse its discretion "in dismissing [Gilbert's] complaint and remitting him to the courts of his own community." [15]

We embraced *Gulf Oil*'s analysis long ago in *Flaiz v. Moore.*[16]  We have never cited

---

8.  *Rouw,* 154 S.W.2d at 145.

9.  *Texas Utils. Elec. Co. v. Timmons,* 947 S.W.2d 191, 199 (Tex.1997); *see* Tex.R.App. P. 56.1(c).

10.  330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

11.  *Gilbert v. Gulf Oil Corp.,* 62 F.Supp. 291 (S.D.N.Y.1945).

12.  *Gilbert v. Gulf Oil Corp.,* 153 F.2d 883 (2d Cir.1946).

13.  *Gulf Oil,* 330 U.S. at 507, 67 S.Ct. 839.

14.  *Id.* at 506, 67 S.Ct. 839.

15.  *Id.* at 512, 67 S.Ct. 839.

16.  359 S.W.2d 872, 874 (Tex.1962).

*Rouw*; rather, we have ignored it. In *Flaiz*, we did not refer to *Rouw* although the lower court cited it.[17] Again in *Dow Chemical Co. v. Alfaro*,[18] we thoroughly examined the history of the *forum non conveniens* doctrine without mentioning *Rouw*, even though the court of appeals cited and distinguished it.[19] In the 57 years since it issued, *Rouw* has been cited in only seven reported decisions.[20] In only two of those decisions have the courts actually followed *Rouw*'s holding. Twenty-five years ago, in *Continental Oil Co. v. P.P.G. Industries*, the court applied *Rouw* without analysis.[21] More recently, in *'21' International Holdings, Inc. v. Westinghouse Electric Corp.*, the court of appeals followed *Rouw* only because of *stare decisis*.[22] Referring to *Rouw* as a "poorly reasoned but binding precedent", Justice Peeples explained in a concurring opinion:

> Because this panel takes seriously its duty to follow binding precedent and is unwilling to engage in unabashed sophistry to avoid *Rouw*, we must reverse the forum non conveniens dismissal.

> Our corporate laws, sensibly interpreted, do not require this result. They give each domestic corporation the power "to sue and be sued, complain and defend, in its corporate name," and give foreign corporations the same rights that domestic corporations have. A fair reading of these

provisions suggests that they simply give foreign corporations the right to appear in court like everyone else, but no right to insist on an utterly inconvenient and harassing forum. It is, to say the least, not apparent from the quoted language that the legislature meant to deprive trial courts of all power to order forum non conveniens dismissals when the facts warrant.

> This intermediate court is obligated to follow supreme court precedents, but the Texas Supreme Court is not so restricted. I urge the court to reexamine *Rouw* and disapprove it. The legislature did not compel the result in *Rouw*, and if it remains the law in Texas, we will be not only the courthouse for the world but the laughingstock of the legal world as well.[23]

■ Although the statutory provisions on which *Rouw* relied have been carried forward without substantive change,[24] we do not regard their reenactment as an endorsement of *Rouw*'s relatively obscure holding. On the contrary, the Legislature has recently reaffirmed the *forum non conveniens* doctrine by amending Section 71.051 of the Civil Practice and Remedies Code to alter our holding in *Dow Chemical Co. v. Alfaro*,[25] which limited that doctrine. It simply makes no sense to allow foreign corporations an absolute right to sue non-residents in Texas

---

**17.** *Flaiz v. Moore*, 353 S.W.2d 74, 76 (Tex.Civ. App.—San Antonio), *rev'd*, 359 S.W.2d 872 (Tex. 1962).

**18.** 786 S.W.2d 674 (Tex.1990).

**19.** *Alfaro v. Dow Chemical*, 751 S.W.2d 208, 209 (Tex.App.—Houston [1 st Dist.] 1988), *aff'd*, 786 S.W.2d 674 (Tex.1990).

**20.** *'21' Int'l Holdings, Inc. v. Westinghouse Elec. Corp.*, 856 S.W.2d 479, 481 (Tex.App.—San Antonio 1993, no writ); *Alfaro*, 751 S.W.2d at 209, *aff'd*, 786 S.W.2d 674 (Tex.1990); *Menchaca v. Chrysler Life Ins. Co.*, 604 S.W.2d 287, 289 (Tex. Civ.App.—San Antonio 1980, no writ); *Continental Oil Co. v. P.P.G. Indus.*, 504 S.W.2d 616, 619 (Tex.Civ.App.—Houston [1 st Dist.] 1973, writ ref'd n.r.e.); *Great American Ins. Co. v. Sharpstown State Bank*, 422 S.W.2d 787, 790 (Tex.Civ. App.—Austin 1967, writ dism'd); *Flaiz*, 353 S.W.2d at 76, *rev'd*, 359 S.W.2d 872 (Tex.1962); *Forcum–Dean Co. v. Missouri Pac. R.R. Co.*, 341 S.W.2d 464, 465 (Tex.Civ.App.—San Antonio 1960, writ dism'd).

**21.** 504 S.W.2d at 619–620, 625 ("On authority of *H. Rouw Co. v. Railway Express Agency*, . . . we hold that the trial court . . . erred in granting a stay of the proceedings in this case.").

**22.** *'21' Int'l Holdings*, 856 S.W.2d at 484 ("[I]t is not within the purview of this intermediate appellate court to legislate the demise of *Rouw*.").

**23.** 856 S.W.2d at 485–486 (Peeples, J., concurring) (footnote and citation omitted).

**24.** *See* TEX. BUS. CORP. ACT art. 8.02(A) (providing that: "A foreign corporation which shall have received a certificate of authority under this Act shall . . . enjoy the same, but no greater, rights and privileges as a domestic corporation".); TEX. BUS. CORP. ACT art. 2.02(A)(2) (providing that: "[E]ach corporation shall have power . . . [t]o sue and be sued, complain and defend, in its corporate name.")).

**25.** 786 S.W.2d 674 (Tex.1990).

courts when individuals have never been accorded the same right. It is fundamentally unfair to burden the people of Texas with the cost of providing courts to hear cases that have no significant connection with the State. "The rule of forum non conveniens, properly used, does not prohibit a court from entertaining a case it ought to hear. Rather, it protects courts from being compelled to hear cases when doing so would be fundamentally unfair to the defendants or the public or both." [26]

For all of these reasons, we overrule *Rouw* and disapprove *Continental Oil* and *'21' International.*

## III

Although we conclude that *Rouw* was wrongly decided and is no longer the law, the district court was bound to follow it. As the United States Supreme Court has observed, "if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." [27] The district court did not abuse its discretion in following *Rouw*, and therefore we will not compel the district court to set aside its decision. We do free the court, however, to consider the application of the *forum non conveniens* doctrine to this case unconstrained by *Rouw*.

The concurring opinion argues that our decision to overrule *Rouw* undermines mandamus procedures and creates uncertainty about when mandamus relief is available. We disagree. Nothing about the nature of mandamus proceedings precludes reconsideration or clarification of authority as in any other case. We have often granted mandamus relief even though the lower court correctly followed existing law. For example, in *Street v. Second Court of Appeals*, [28] we issued mandamus directing the court of appeals to withdraw its writ of mandamus requiring the trial court to abate a *Stowers* [29] action until the underlying suit became final. That holding conflicted with our opinion in *Linkenhoger v. American Fidelity & Casualty Co.*, [30] where we had held that a *Stowers* case could not be maintained until the insured's "liability and the extent thereof had been determined by a final judgment in the former case." [31] We then went on:

> The court's opinion in *Linkenhoger* was overruled in part by *Hernandez [v. Great American Ins. Co.*, 464 S.W.2d 91 (Tex. 1971) ], when this court held that a *Stowers* action accrued when the judgment against the insured became final rather than when the insured actually made an excess payment to the original plaintiff. Today, we further overrule *Linkenhoger* in part to hold that a judgment is final for the purposes of bringing a *Stowers* action if it disposes of all issues and parties in the case, the trial court's power to alter the judgment has ended, and execution on the judgment, if appealed, has not been superseded. We believe this rule is most consistent with the ends of justice. [32]

Thus, we held that the appeals court abused its discretion by requiring the trial court to follow Supreme Court authority.

In *Doctors Hospital Facilities v. Fifth Court of Appeals*, [33] we issued mandamus directing the court of appeals to rule on a motion for rehearing instead of dismissing it for want of jurisdiction so that the points raised in the motion could be brought here by application for writ of error. We observed:

---

**26.** *Dow Chem.*, 786 S.W.2d at 707 (Hecht, J., dissenting).

**27.** *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

**28.** 756 S.W.2d 299 (Tex.1988).

**29.** *G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex.Com.App.1929).

**30.** 152 Tex. 534, 260 S.W.2d 884 (1953).

**31.** *Id.* at 887.

**32.** 756 S.W.2d at 301 (citation omitted).

**33.** 750 S.W.2d 177 (Tex.1988).

We recognize that language in *Johnson v. Sovereign Camp, W.O.W.*, [125 Tex. 329, 83 S.W.2d 605 (1935),] countenances the result reached by the court of appeals. However, that case has been rightly criticized as "obviously unjust." *Ratcliff v. National County Mutual Fire Ins. Co.*, 745 S.W.2d 75, 77 (Tex.App.—Dallas 1988, writ dism'd w.o.j.). We overrule *Johnson*, to the extent that it conflicts with our decision in this case.[34]

Thus, we held that the appeals court abused its discretion in following a 1935 decision of this Court that had once been criticized.

In *Lunsford v. Morris*,[35] we issued mandamus directing the trial court to allow discovery of a defendant's net worth in connection with a claim of punitive damages. We said:

Texas has allowed neither discovery nor admission of evidence concerning a defendant's net worth. One hundred years ago, this court determined that the injury inflicted, rather than the ability of a defendant to pay, was the more important consideration. *Young v. Kuhn*, 71 Tex. 645, 652, 9 S.W. 860, 862 (1888). This view has persisted to the present day despite overwhelming authority to the contrary. *See Murphy v. Waldrip*, 692 S.W.2d 584, 588 (Tex.App.—Fort Worth 1985, no writ).[36]

After reviewing the pertinent policy considerations, we concluded that *Young v. Kuhn* "is no longer controlling."[37] Thus, we held that the trial court abused its discretion in following a century of consistent precedent. Although JUSTICE GONZALEZ dissented from that conclusion, he "agree[d] with the court that a jury should be able to consider the financial condition of the defendant in order to determine exemplary damages."[38] Thus, even though JUSTICE GONZALEZ would not have mandamused the trial court for following the law, he would have changed the law in the Court's opinion, even if it required

overturning a prior decision of this Court in a mandamus proceeding.

■ We believe JUSTICE GONZALEZ's position in *Lunsford* is generally preferable: although a lower court ordinarily should not be said to have abused its discretion in following existing law, even if that law is no longer valid or should be significantly changed, in denying mandamus relief it is appropriate to state what the correct law is in order to permit the lower court to reconsider its decision. Thus, for example, in *Crown Central Petroleum Corp. v. Garcia*,[39] this Court for the first time set guidelines for taking depositions of high level corporate officials—so-called "apex depositions". We concluded: "Because these guidelines had not been adopted prior to the trial court's orders, we deny the writ of mandamus without prejudice so that the trial court may reconsider its order".[40] Likewise, in *Phoenix Founders, Inc. v. Marshall*,[41] we held that a law firm's hiring opposing counsel's paralegal did not require the firm's disqualification in the litigation if the paralegal was screened from any contact with the case at the firm. We concluded: "Because we have modified the controlling legal standard, the writ of mandamus is denied without prejudice to allow the trial court to reconsider the disqualification motion in light of today's opinion."[42] Again in *National Tank Co. v. Brotherton*,[43] after clarifying when a post-accident investigation is conducted in anticipation of litigation, we concluded: "[A]s we have modified the controlling legal standard, we believe that the trial court should have an opportunity to reconsider its conclusion in light of today's opinion."

In none of these cases did we deny mandamus relief without explaining or clarifying the correct rule of law. We do not find the concurring opinion's attempts to distinguish

**34.** *Id.* at 179.

**35.** 746 S.W.2d 471 (Tex.1988).

**36.** *Id.* at 472.

**37.** *Id.* at 473.

**38.** *Id.* at 474 n. 1 (Gonzalez, J., dissenting).

**39.** 904 S.W.2d 125 (Tex.1995).

**40.** *Id.* at 128.

**41.** 887 S.W.2d 831 (Tex.1994).

**42.** *Id.* at 836.

**43.** 851 S.W.2d 193, 207 (Tex.1993).

these cases persuasive. The concurring opinion would alter our mandamus procedures, not follow them.

For the Court to refuse to consider *Rouw*'s validity would have an unusually perverse result in this case. By dutifully following *Rouw*, which precludes consideration of the application of *forum non conveniens* on its merits, the district court has not abused its discretion but has committed reversible error. Unless Smith Barney prevails, continuing the litigation is almost certainly a waste of the parties' and the public's resources. But if the district court had refused to follow *Rouw*, believing it to be dead-letter, it also would not have abused its discretion. A trial court surely could not be directed to follow a case that should be overruled. By deciding Smith Barney's motion unconstrained by *Rouw*, the district court would have spared the parties and the public the potential waste of time and resources caused by following *Rouw*. Our refusal to address *Rouw* would thus encourage the district court to ignore it, as the less risky course. The lower courts should not be discouraged from following precedent. But if we are to require adherence to precedent, we are obliged to explain what precedent requires.

\* \* \* \* \*

For the reasons explained, we deny Smith Barney's petition for mandamus.

HANKINSON, Justice, filed a concurring opinion, in which ENOCH, SPECTOR and BAKER, Justices, joined.

Because the trial court did not clearly abuse its discretion by following binding legal precedent, the Court correctly concludes that mandamus should be denied. The consequence of that conclusion should be that the relief sought by the relator is denied. But by overruling *H. Rouw Company v. Railway Express Agency*, 154 S.W.2d 143 (Tex.Civ. App.—El Paso 1941, writ ref'd), the Court effectively grants Smith Barney all the relief it seeks and firmly establishes a new basis for mandamus relief in general: "[A]lthough a lower court ordinarily should not be said to have abused it discretion in following existing law, even if that law is no longer valid or should be significantly changed, in denying mandamus relief it is appropriate to state what the correct law is in order to permit the lower court to reconsider its decision." at 599. In my view this approach undermines the requirements of *Walker v. Packer*, 827 S.W.2d 833 (Tex.1992), and creates more uncertainty in an already uncertain area of practice. Accordingly, while I concur in the judgment, I write separately to explain my view that the Court has moved far afield from the mandamus standards it recites and purports to follow.

Generally, mandamus should not issue unless the relator shows that the trial court committed an abuse of discretion for which there is no adequate remedy at law. *See Walker*, 827 S.W.2d at 839. The Court agrees that the trial court did not abuse its discretion by following *Rouw*. As for the second requirement, adequacy of an appellate remedy, the Court has previously determined that the expense of pursuing trial and appeal does not of itself justify mandamus relief. *See, e.g., CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996); *Walker*, 827 S.W.2d at 842. Under these circumstances, the Court's decision to consider the merits of *Rouw* gives relator the benefit of an *ultra vires* interlocutory appeal.

The uncertainty created by the Court's approach in this case is even more troubling. When the Court makes relief available in the absence of a trial court's abuse of discretion and a showing that an ordinary appeal would be inadequate, litigants are unable to predict what they must show to obtain relief. In lieu of standards, and without guidance, litigants are simply put to guessing what issue will catch the attention of five justices at any given time. Unpredictability may well encourage more petitions, with the result that resources will have been wasted on mandamuses that should never have been filed.

Finally, the authority the Court cites to support its argument that it must change the law in this proceeding for the benefit of the trial court and parties does not help. Although the Court claims to follow "a consistent line of mandamus cases," at 599, these cases either are distinguishable or represent aberrations in the Court's mandamus juris-

prudence, which, to the extent they are persuasive, do not justify the uncertainty they engender. For example, *Doctors Hospital Facilities v. Fifth Court of Appeals,* 750 S.W.2d 177 (Tex.1988), involved violations of legal duties to perform a ministerial act by a court of appeals panel. The case was not decided under the clear abuse of discretion standard. *Phoenix Founders, Inc. v. Marshall,* 887 S.W.2d 831 (Tex.1994), and *National Tank Co. v. Brotherton,* 851 S.W.2d 193 (Tex.1993), likewise can be distinguished. *Phoenix Founders* involved a motion to disqualify a law firm, while *National Tank* involved privileged documents. Cases such as these traditionally prompt us to emphasize that the harm at issue cannot be remedied by appeal. This case, in contrast, involves a motion to dismiss—an incidental pretrial ruling that is not typically appropriate for mandamus relief. *See Abor v. Black,* 695 S.W.2d 564, 566–67 (Tex.1985) (citing *Pope v. Ferguson,* 445 S.W.2d 950, 953–54 (Tex.1969)).

While *Street v. Second Court of Appeals,* 756 S.W.2d 299 (Tex.1988), and *Crown Central Petroleum Corp. v. Garcia,* 904 S.W.2d 125 (Tex.1995), did involve some modification of the underlying substantive law in a mandamus proceeding, *Lunsford v. Morris,* 746 S.W.2d 471 (Tex.1988), is the only case the Court cites that is squarely like the case presented today. The approach in *Lunsford,* however, has been roundly criticized, despite its seeming appeal. And the fact the Court has modified the law previously in one or two mandamus proceedings is not a compelling reason to continue to do so. Rather, the Court should leave the question of whether *Rouw* should be overruled to be considered in due course on ordinary appeal.

By relaxing mandamus standards to in effect grant Smith Barney relief, the Court firmly establishes a practice I cannot but view as unwise. The Court's approach retreats from our mandamus standards and contravenes our duty to promote certainty and predictability in the law. Accordingly, while I agree that mandamus should not issue, I cannot join the Court's opinion.