### Thomas G. ADAMS, D. O., et al., Appellants,

v.

### ESC MEDICAL SYSTEMS, INC. and Luxar Corporation, Appellees.

### No. 14–03–01286–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 17, 2004.

4. Appellant's first issue, if sustained, would only provide him with a new punishment hearing, so we need not address it.

**50**

James B. Lewis, Robert W. Hildebrand, Patrick Zummo, Houston, for appellants.

Frank A. Monago, Marc Lance Ellison, Houston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and SEYMORE.

## OPINION

RICHARD H. EDELMAN, Justice.

In this products liability case, seventy appellants appeal the dismissal of their claims based on forum non conveniens ("FNC") on the grounds that ESC Medical Systems, Inc. and Luxar Corporation (collectively, "ESC") failed to show that: (1) there was a single preferable alternative forum; or (2) the *Gilbert*[1] factors weighed

---

**1.** *See Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

**2.** The *Gilbert* analysis has been adopted by the Texas Supreme Court. *See In re Smith Barney*, 975 S.W.2d 593, 596 (Tex.1998).

strongly in favor of the dismissal. We affirm.

## Background

This case was brought by twelve Texas, and seventy non-resident, health care providers, alleging that various laser hair removal and other cosmetic medical devices they purchased from ESC did not operate as promised. The trial court's order (the "order") dismissed only the claims of the seventy non-resident plaintiffs, who reside in twenty-two other states.

## Standard of Review

An FNC determination is reviewed for abuse of discretion. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).[2] FNC is an equitable doctrine exercised when a court determines that, for convenience and the interest of justice, an action should instead be instituted in another forum,[3] commonly because non-resident claimants are asserting claims that arose outside the state and will require application of foreign law. *See Flaiz v. Moore*, 359 S.W.2d 872, 874–75 (Tex.1962). Factors relevant to an FNC determination include: (1) private interests, such as relative ease of access to sources of proof; and (2) public interests, such as administrative difficulties for the courts. *See Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839. Unless the balance of factors strongly favors the defendant, the plaintiff's choice of forum should rarely be disturbed. *Id.* at 508, 67 S.Ct. 839.

Appellants' three issues essentially argue that, because appellees failed to show the existence of a single, or otherwise pref-

---

**3.** *See Exxon Corp. v. Choo*, 881 S.W.2d 301, 302 n. 2 (Tex.1994).

erable, alternative forum for the case, the trial court abused its discretion by scattering their seventy claims to be litigated in at least twenty-two separate lawsuits in that many other states.[4]

## Availability of Alternative Forum

■ It is undisputed that dismissal for FNC requires the existence of an alternative forum in which all of the defendants are amenable to process.[5] However, a further question presented in this case is whether FNC requires an alternative forum in which all of the defendants are amenable to process *by all of the plaintiffs*. At least two Texas opinions have contained language suggesting that the entire case and all parties should be able to come within the jurisdiction of the alternative forum.[6] However, neither of those cases, nor any other opinion the parties have cited or we have found, overturned an FNC dismissal for the lack of such an alternative forum; and one Texas case arguably rejected the argument that such a forum must exist.[7] Under these circumstances, we lack a sufficient basis to conclude that the dismissal was in error for the absence of a single alternative forum in which all of the defendants were amenable to process by all of the plaintiffs.

## Adequacy of Alternative Forum

■ Appellants's third issue contends the trial court abused its discretion because ESC failed to show that the *Gilbert* factors strongly favor dismissal.[8] Appellants maintain that the numerous state forums are not more convenient for anyone.

Application of the *Gilbert* factors obviously varies according to the perspective from which they are viewed. Because appellees' claims all arose in other states, the *Gilbert* factors favor the dismissal and refiling in those respective states in that sources of proof will be more easily accessible there; governing law can more readily be applied by courts there; and Texas courts and jurors will not be imposed upon to determine disputes that have no relation to them. On the other hand, consolidating such litigation in a single court, rather than at least twenty-three, offers considerable advantages in terms of judicial economy, reducing the likelihood of contradictory determinations, and arguably increasing the likelihood of a large-scale settlement.

The fact that this suit was also brought by Texas plaintiffs (indeed, a disproportionate number of Texas plaintiffs [9]) fur-

---

4. In dismissing the claims of the seventy non-resident plaintiffs, the trial court's order did not identify an alternative forum, but accepted appellees' stipulation that, if the dismissed plaintiffs file actions in their respective home states within one year of the dismissal, ESC would not object to jurisdiction, and any applicable statute of limitations would be tolled.

5. *See, e.g., Direct Color Servs., Inc. v. Eastman Kodak Co.,* 929 S.W.2d 558, 564 (Tex.App.-Tyler 1996, writ denied); *Sarieddine v. Moussa,* 820 S.W.2d 837, 841–42 (Tex.App.-Dallas 1991, writ denied).

6. *See Direct Color,* 929 S.W.2d at 564; *Sarieddine,* 820 S.W.2d at 841.

7. *See Direct Color,* 929 S.W.2d at 564.

8. However, although not material to our determination, at least one Texas opinion has held that, once a defendant establishes the existence of an alternative forum, the burden shifts to the plaintiff to prove that it is not adequate. *See Direct Color,* 929 S.W.2d at 563.

9. We have not found a break-down in the record of the number of plaintiffs from each state. However, dividing the 70 non-resident plaintiffs by the 22 states they represent produces an average of less than four plaintiffs for each of those states; whereas the 12 Texas plaintiffs amount to more than three times that average.

ther obscures the *Gilbert* analysis. Although not framed in such terms, the FNC dismissal in this case is, in effect, a considerable constraint on whatever right of permissive joinder Texas plaintiffs have with regard to out-of-state plaintiffs. As a practical matter, if fracturing multi-state plaintiffs' claims, as occurred in this case, is proper on FNC grounds, then the ability of plaintiffs from multiple states to bring joint actions in Texas is seriously in question, and without regard to the considerations that otherwise govern joinder of claims. We have found nothing to suggest that this is in any way an objective of the FNC doctrine. Nevertheless, despite the potentially wide-ranging, and possibly unintended, consequences of applying the FNC doctrine in this manner, we have not been provided authority clearly demonstrating it to be error. Accordingly, appellant's issues are overruled, and the judgment of the trial court is affirmed.