**Petition for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed April 13, 2012.**



In The

# Fourteenth Court of Appeals

———————

## NO. 14-11-01039-CV

———————

## IN RE SXP ANALYTICS, LLC and EMMANUEL M. MAMALAKIS, Relators

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**133rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-27796**

---

## M E M O R A N D U M   O P I N I O N

Relators, SXP Analytics, LLC and Emmanuel M. Mamalakis, filed a petition for writ of mandamus against the respondent, the Honorable Jaclanel McFarland, presiding judge of the 133rd District Court of Harris County, Texas, complaining of her order dated October 24, 2011, denying their motion for the court to decline jurisdiction on the basis of *forum non conveniens*. We conditionally grant the writ.

The underlying lawsuit resulted from a dispute between the real party plaintiff, Vitaliy Godlvesky, and Mamalakis over the ownership of SXP, a corporation formed in 2007 to engage in high-speed electronic stock trading and registered in Wisconsin as a limited liability company. Until September 2008, SXP maintained and operated offices in

both Milwaukee, Wisconsin and Houston, Texas. From 2007 until September 2008, Godlevsky resided in Houston and "ran SXP's operations in Houston," while Mamalakis resided in Milwaukee and focused on "legal matters and high-level business planning." In September 2008, the company's operations were consolidated to the Milwaukee office, and the Houston operations were shut down. Godlevsky also relocated to Milwaukee.

In February 2011, Mamalakis allegedly breached a purported oral agreement with Godlevsky regarding SXP's ownership, refused Godlevsky access to his capital account and profits of the company, and locked him out of the premises. In May 2011, Godlevsky filed suit in Houston, alleging claims against relators for breach of contract, fraudulent inducement, breach of fiduciary duty, and shareholder oppression, among others.[1] He asked to be declared a one-third owner of SXP and requested a court-supervised accounting, alleging corporate waste and mismanagement. Relators answered the suit in July 2011 and filed a *forum non conveniens* motion and supporting affidavit at the same time. Godlevsky filed a response to the motion with a supporting affidavit, and the respondent heard argument of counsel at a brief hearing on August 30, 2011. The hearing was continued on October 24, 2011, and the trial court signed an order denying the motion that day, without making written or oral findings expressing the reasoning for its decision. This proceeding followed.

Mandamus relief is available if the trial court abuses its discretion, either in resolving factual issues or in determining legal principles, when there is no other adequate remedy by law. *See Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992). Mandamus is appropriate to remedy the improper denial of a motion to dismiss for *forum non conveniens. In re Pirelli Tire, LLC,* 247 S.W.3d 670, 679 (Tex. 2007). We review a trial court's refusal to dismiss on *forum non conveniens* grounds for abuse of discretion. *Id.*

---

[1] Godlevsky's claims against another Wisconsin corporation, JEPP Financial LLC, have been dismissed.

2

A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *In re General Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008). As the reviewing court, we do not re-weigh the factors applicable to a *forum non conveniens* analysis, but only ensure the trial court acted within its sound discretion when it determined whether dismissal was appropriate. *See Perilli Tire,* 247 S.W.3d at 676.

In their petition for writ of mandamus, relators complain that the trial court applied an incorrect legal standard, improperly weighed the relevant factors, and insufficient evidence supports the trial court's denial of their motion. Sufficiency of the evidence is relevant in assessing whether the trial court abused its discretion. *Baker v. Bell Helicopter Textron, Inc.*, 985 S.W.2d 272, 277 (Tex. App.—Fort Worth 1999, pet. denied) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)).

First, relators assert that the trial court appeared to have applied a personal jurisdiction analysis in making its ruling.[2] At the August 30 hearing, the respondent indicated that a personal jurisdiction case, *Citrin Holdings LLC v. Minnis,* 305 S.W.3d 269 (Tex. App.—Houston [14th Dist.] 2009, no pet.), should govern the outcome of relators' *forum non conveniens* motion.[3] The court recessed the hearing and requested briefing on the case. The parties filed briefs and the hearing resumed on October 24. The respondent heard additional argument of counsel, and denied the motion, indicating that she believed that she had already ruled. The trial court did not express a basis for its ruling.

---

[2] The record does not clearly demonstrate that the trial court improperly conflated personal jurisdiction and *forum non conveniens.* At one point, the court acknowledged the distinction between the two legal issues as follows:

> THE COURT: You're acknowledging that I have jurisdiction. You're just saying more stuff happened in Wisconsin. There is more Wisconsin stuff. It would be easier there, right?

[3] In *Citrin,* the same trial court and this court found that the defendants had sufficient minimum contacts with the state of Texas to support personal jurisdiction. *Id.* at 281-88. At the August 30, 2011 hearing, respondent replied to relators' *forum non conveniens* argument by stating that *Citrin* was "on almost the exact same issue" and "[p]retty much right on point."

3

Whether a court has personal jurisdiction over a defendant and whether the court should decline jurisdiction based on *forum non conveniens* are distinct inquiries. The doctrine of *forum non conveniens* applies only if the trial court has jurisdiction over the parties. *See Vinmar Trade Fin., Ltd. v. Util. Trailers de Mexico, S.A.,* 336 S.W.3d 664, 671 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Exxon Corp. v. Choo*, 881 S.W.2d 301, 302 n. 2 (Tex. 1994)). Dismissal based on *forum non conveniens* is appropriate when there are sufficient contacts between the defendant and the forum state to confer personal jurisdiction on the trial court, but the case itself has only insignificant connections to the forum. *In re Omega Protein, Inc.*, 288 S.W.3d 17, 21 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding) (citing *Pirelli Tire*, 247 S.W.3d at 675); *see also Vinmar,* 336 S.W.3d at 671-72 (observing that *forum non conveniens* is a "non-jurisdiction issue").

The central focus of the *forum non conveniens* inquiry is convenience. *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 33 (Tex. 2010) (per curiam) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249, 102 S.Ct. 252, 262 (1981)). The United States Supreme Court articulated the common law factors to be applied in a *forum non conveniens* analysis in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839 (1947).[4] The well-known *Gulf Oil* factors direct courts to consider both public and private interest considerations in *forum non conveniens* dismissals. *Quixtar* 315 S.W.3d at 33 (citing *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. 839). As long as the trial court considered the relevant *Gulf Oil* factors, and reasonably balanced these factors, its decision ordinarily deserves substantial deference. *Quixtar*, 315 S.W.3d at 31. However, a nonresident plaintiff's choice of a Texas forum is entitled to "substantially less deference." *Quixtar*, 315 S.W.3d at 32 (citing *Pirelli*, 247 S.W.3d at 675 and *Reyno.*, 454 U.S. at 255-56, 102 S.Ct. 252).

---

[4] The Texas statute governing *forum non conveniens* applies to personal injury and wrongful death actions. *See* Tex. Civ. Prac. & Rem. Code § 71.051(b).

Before weighing the public and private interests, it must first be determined whether an alternate forum is available and adequate. An alternate forum is one where the defendants are amenable to process. *Gen. Elec.,* 271 S.W.3d at 688. Where another state is the alternate forum, principles of comity presume that the alternative forum is adequate unless the remedies it offers are so unsatisfactory that they actually comprise no remedy at all. *Id.* In the court below, Godlevsky did not dispute that Wisconsin is an adequate forum. All parties reside in Wisconsin; thus, Wisconsin can exercise jurisdiction over all the parties. In fact, a separate suit between the parties is already pending in Wisconsin.[5] We conclude that state court in Wisconsin is an adequate alternative forum.

Next, the trial court was required to consider and weigh the public and private interest factors. The private interests that must be considered in a *forum non conveniens* analysis are: relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining willing witnesses; the possibility of viewing the premises (if necessary); enforceability of any judgment obtained; and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839; *Quixtar,* 315 S.W.3d at 34.

Godlevsky seeks an accounting of the value of SXP, and most of the witnesses and company documents are in Wisconsin. Relator SXP is a Wisconsin limited liability company. SXP's operations have been in Milwaukee since September 2008. All company records are maintained in Wisconsin, and SXP's bank accounts are in Wisconsin. Non-party associates of the parties, such as SXP's accountants, are located in Wisconsin

---

[5] *See SXP Analytics, LLC and Emmanuel M. Mamalakis v. Vitaliy Godlevsky,* No. 11CV016686, in the Circuit Court of Milwaukee County, Wisconsin, which was filed after this suit. The parties are also engaged in litigation in federal court in Houston. *See Quantlab Technologies Ltd. (BVI) and Quantlab Finanacial, LLC v. Vitaliy Godlevsky, Andriy Kuharsky, Anna Maravina, Ping An, Emmanuel Mamalakis, and SXP Analytics,* Civil Action No. H-09-4039, in the Southern District of Texas, Houston, Division. According to Godlevsky, Quantlab, a Houston company where he was formerly employed, is suing for misappropriation of trade secrets. The existence of related litigation is not one of the *Gulf Oil* factors to be considered in a *forum non conveniens* analysis.

5

and are not subject to compulsory process in Texas. Most of SXP's employees (22 out of 26) are in Wisconsin, and none are in Texas. SXP would be required to incur the burden and expense of bringing its Wisconsin-based employees to Texas for trial. In addition, because all parties are located in Wisconsin, and SXP has no assets in Texas, a judgment awarded by a Wisconsin court would be more easily enforced against a Wisconsin company or residents of Wisconsin.

In his response to relators' petition for writ of mandamus, Godlevsky asserts that he has subpoenaed documents from a Dallas-based clearing house called Penson Financial, Inc., which has "cleared," or recorded and executed, all of SXP's trades beginning in 2008 after the company relocated to Wisconsin. He contends that Penson is an independent witness with knowledge of SXP's value, and he would be unable to subpoena a Penson representative to testify at trial in Wisconsin. Dallas is also beyond the 150-mile subpoena range from Harris County. *See* Tex. R. Civ. P. 176.3. Therefore, a Penson representative could not be compelled to testify in either forum. Accordingly, this proposed evidence does not outweigh the evidence available in Wisconsin.

Godlevsky also asserts that beginning with negotiations in 2007, the parties formed their ownership agreement in Houston, and he alleged that Mamalakis never intended to honor that agreement at the time it was made.[6] In addition to alleging that Mamalakis breached an oral ownership agreement, Godlevsky alleges he was fraudulently induced to enter the agreement in Texas. Godlevsky also states that he invested $80,000 in the company while it was operating in Texas, and he seeks repayment. Godlevsky states that he intends to call a former owner of the business, Andriy Kuharsky, and several former employees or former consultants: Vasili Wylie, Artom Boganovitch, Matthew Stevens, Ping Ann, and Scott Mace. In addition, he has stated that he will call Reverend Lubomir Kupec, a Russian priest who

---

[6] In describing the 2007 meeting where the agreement for form SXP was made, Godlevsky averred in his affidavit filed in response to relators' *forum non conveniens* motion that, "[a]lthough we did not decide my exact ownership interest at the time, it was eventually set at 1/3 of the company."

knows both Mamalakis and Godlevsky, and Anya Maravina, Kuharsky's friend, as witnesses. All of these witnesses reside in Houston, and Godlevsky asserts that they could offer testimony that they were "aware" of Godlevsky's alleged ownership interest in SXP while the company was operating in Houston. Godlevsky states that Kuharsky is the only independent witness to the agreement and was present at the meetings with Mamalakis where the plans to start a stock trading company were discussed. Indeed, Godlevsky states that Kuharsky was a party to the oral agreement to form SXP. Relators respond that most, if not all, of this proposed testimony is not based on personal knowledge. For example, Godlevsky's "key witness," Kuharsky, who left the company in January 2008, provided an affidavit stating in part, "*From my understanding*, Mr. Godlevsky's ownership in the company was *eventually* fixed at 33%." (emphasis supplied).

While testimony concerning formation of the company may have some relevance to the issues to be decided, the crux of Godlevsky's suit concerns conduct after SXP moved its offices to Wisconsin. Evidence to support Godlevsky's allegations of corporate mismanagement and shareholder oppression will be in Wisconsin where SXP's offices and records are located. The weight of evidence of a purported oral agreement to start a company that was made in Texas is less than that of the formal documents creating SXP as a limited liability company under Wisconsin law, which will govern most, if not all, issues related to the company. Weighing Godlevsky's proposed witnesses against the witnesses and evidence available in Wisconsin favor litigating the suit in Wisconsin. The private interest factors weigh in favor of dismissal.

The *Gulf Oil* public interest factors to consider in determining *forum non conveniens* are: administrative difficulties related to court congestion; jury duty imposed upon people of a community that has no relation to the litigation; local interest in having localized controversies decided at home; and trying the case in a forum that is familiar with the law that governs the case. *Gulf Oil,* 330 U.S. at 508-09. 67 S.Ct. 839; *Quixtar,* 315 S.W.3d at 33-34.

7

The ultimate issues at trial will concern a dispute between Wisconsin residents and a Wisconsin company. While Godlvesky, the plaintiff, formerly resided in Houston, he now resides in Wisconsin. In September 2008, SXP's operations were consolidated in the Wisconsin office. The breach of contract at issue purportedly occurred in Wisconsin in 2011, when Mamalakis allegedly froze Godlevsky out of the company. Therefore, Wisconsin is the locale for evidence relevant to the alleged breach of the contract and any damages. Although the discussions leading to the formation of the company occurred in Texas, the company was formed under Wisconsin law. Thus, the ownership and management of a Wisconsin company, organized under Wisconsin statutes and maintaining its only place of business in Wisconsin, is at issue. Godlevsky seeks an accounting of SXP's assets and alleges mismanagement and breach of fiduciary duties. Wisconsin's statutory scheme for regulating limited liability companies like SXP will be applied at trial. For example, Godlevsky's complaint about the denial of his capital account should be governed by Chapter 183 of the Wisconsin Statutes, known as Wisconsin Limited Liability Company Law. *See, e.g.,* Wis. Stat. § 183.0501 (governing member contributions to limited liability companies and requiring the value of contributions to be kept in the company's records).

The United States Supreme Court has recognized that jurisdiction should normally be declined "where a determination of the rights of the litigants involves regulation and management of the internal affairs of the corporation dependent upon the laws of the foreign State . . . or where the relief sought may be more appropriately adjudicated in the courts of the State or country to which the corporation owes its existence." *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 530-31 (1947). The Court held that the plaintiff's chosen forum, New York, lacked a substantial connection to litigation of claims of alleged waste and mismanagement where the defendant corporation conducted business in New York, but had its place of incorporation and principal place of business Illinois. *Id.* at 531.

There is a strong interest in having localized controversies decided at home in a

forum that is familiar with the state law that must govern the case. *Pirelli Tire,* 247 S.W.3d at 677. The Texas Supreme Court has recognized that "[i]t is fundamentally unfair to burden the people of Texas with the cost of providing courts to hear cases that have no significant connection with the State." *In re Smith Barney*, 975 S.W.2d 593, 598 (Tex. 1998). Accordingly, the public interest factors weigh in favor of litigating this suit in Wisconsin.

The *forum non conveniens* analysis in this case is similar to that in *Quixtar,* decided by the Texas Supreme Court in 2010. *See Quixtar,* 315 S.W.3d 31. In *Quixtar,* both plaintiff and defendant had their principal places of business in Michigan. *Id.* at 34. Leading up to the initiation of the lawsuit, the parties had a key meeting in Michigan to attempt to resolve a dispute over competition between the two companies. *Id.* at 30. Most of the important witnesses and key decision-makers at each company were located in Michigan and a majority of the records about matters related to the suit were maintained in Michigan. *Id.* at 34. As in this case, the non-resident plaintiff was able to show some connection to Texas because it conducted business and had affiliates here. *Id.* at 33. Only one prospective plaintiff's witness "appeared to have material, firsthand knowledge of events leading up to . . . [the] lawsuit." *Id.* at 34. The supreme court concluded that the tenuous connection to Texas, which occurred long before the events that prompted the suit, did not support retaining jurisdiction in Texas. *Id.* As in *Quixtar,* the connection to Texas in this case occurred years before the alleged breach that occurred in another forum and prompted this suit. Accordingly, the connection to Texas does not weigh in favor jurisdiction here.

There is very little indication in the hearing records included with relators' petition revealing how the trial court evaluated the *Gulf Oil* factors in denying relators' motion to dismiss for *forum non conveniens*. To the extent that the court followed a personal jurisdiction analysis instead of the *Gulf Oil* factors in making its *forum non conveniens*

ruling, we conclude that the court abused its discretion. We further conclude that relators presented sufficient evidence for the trial court to determine that, while there is some connection to Texas, the *Gulf Oil* factors favor a Wisconsin forum. Therefore, we hold that the trial court abused its discretion in denying relators' motion to dismiss. We conditionally grant the petition for a writ of mandamus and direct the trial court to grant relators' motion to dismiss this suit based on *forum nonconveniens*. The writ will issue only if the trial court fails to act in accordance with this opinion.

PER CURIAM

Panel consists of Chief Justice Hedges and Justices Boyce and Christopher.